#26512-rev & rem-SLZ

**2013 S.D. 42**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

IN THE MATTER OF THE ESTATE OF
EUGENE SHIPMAN, ALSO KNOWN AS
GENE SHIPMAN, ALSO KNOWN AS
EUGENE E. SHIPMAN, DECEASED

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE  SIXTH JUDICIAL CIRCUIT
GREGORY COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE KATHLEEN F. TRANDAHL
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

JEREMY LUND
Special Assistant Attorney General
Pierre, South Dakota     Attorneys for appellant South
              Dakota Department of Social
              Services.


JACK GUNVORDAHL of
Gunvordahl & Gunvordahl
Burke, South Dakota      Attorneys for appellee Estate of
              Eugene Shipman.

\* \* \* \*

ARGUED ON MARCH 20, 2013

OPINION FILED **06/05/13**

#26512

ZINTER, Justice

[¶1.]        After Arline Shipman moved into a nursing home in 2008, her husband, Eugene, "spent down" some of their joint funds to pay for Arline's care and to qualify her for Medicaid long-term-care assistance.  In 2009, Eugene executed a will, which disinherited Arline.  The will indicated that Eugene had disinherited Arline because he "ha[d] given her sufficient consideration during [his] lifetime."  On the same day that the will was executed, Arline's attorney-in-fact (her son, David) disclaimed any inheritance Arline may have been entitled to receive from Eugene's estate "due to the fact that [Eugene had] taken care of [Arline] and paid for [her] nursing home care[.]"  In 2010, while Arline was receiving Medicaid assistance for her nursing home care, Eugene unexpectedly predeceased her.  Arline's guardian ad litem subsequently petitioned for an elective share of Eugene's estate.  The circuit court denied the petition.  The Department of Social Services, who administers the Medicaid program, intervened and moved to reconsider.  The court denied the Department's motion, and the Department appeals.  We reverse.

*Facts and Procedural History*

[¶2.]        Eugene and Arline Shipman were married for over fifty years.  In April 2008, Arline moved into a nursing home because she was suffering from dementia, she required full-time care, and Eugene could no longer care for her.  In November 2008, Eugene submitted an application to the Department for Medicaid long-term-care assistance.  After assessing the Shipmans' financial resources, the Department concluded that Arline did not qualify for Medicaid because the value of the

-1-

Shipmans' combined "countable resources" exceeded the total allowable limit for long-term care.

[¶3.]     After the Department's denial of Arline's initial application, Eugene spent down $99,953.17 of their joint financial resources to pay for Arline's nursing home care. In January 2010, Eugene reapplied for Medicaid on Arline's behalf. The Department reassessed the Shipmans' financial condition, and because their countable resources were then less than their "protected allowance," Arline qualified for Medicaid long-term-care assistance. The Department approved Arline's application in February 2010.

[¶4.]     In July 2010, Eugene unexpectedly predeceased Arline. As previously noted, Eugene's March 9, 2009 will indicated that he had disinherited Arline because he "ha[d] given her sufficient consideration during [his] lifetime." Eugene bequeathed half of his estate to the Shipmans' son, David, and the remaining half to the Shipmans' grandchildren.

[¶5.]     Although Eugene had disinherited Arline, surviving spouses are generally entitled to an elective share of a deceased spouse's estate. *See* SDCL 29A-2-202. However, on the same day that Eugene executed his will in 2009, David, as Arline's attorney-in-fact, had disclaimed "any inheritance that [Arline] may [have been] entitled to in the estate of Eugene Shipman . . . due to the fact that he [had] taken care of [her] and paid for [her] nursing home care[.]"[1]

---

1.     The Estate argues that the disclaimer was in accord with Arline's "wishes, desires, and interests," emphasizing that she was of "sound mind" when she appointed David as her attorney-in-fact in 2005. The Estate, however, makes no claim that Arline was of sound mind and capable of making such decisions

(continued . . .)

[¶6.] David was appointed personal representative of Eugene's estate (the Estate) in August 2010. The Estate notified the Department that Arline was disinherited under Eugene's will. In response, the Department advised that Arline would be required to pursue her elective share before receiving further Medicaid long-term-care assistance.

[¶7.] A guardian ad litem was appointed to represent Arline's interests. In October 2010, the guardian petitioned for an elective share and moved to set aside the disclaimer.[2] The Estate opposed the petition, arguing that the disclaimer was valid and enforceable. Alternatively, the Estate argued that Arline had already received her elective share because Eugene had financially cared for Arline during his lifetime. The Estate explained that Eugene had cared for her before her institutionalization and he had used their joint resources to pay for Arline's nursing home care until she became eligible for Medicaid.

[¶8.] After a hearing, the circuit court denied Arline's petition for an elective share. The court also denied Arline's motion to revoke the disclaimer. The court concluded that Arline had validly disclaimed her right to an elective share. The court also concluded that Arline had received her "fair share" of Eugene's estate when, during the marriage, Eugene used their joint resources to pay for her nursing home care.

_____

(. . . continued)
in 2009, when she was in the nursing home and David executed the disclaimer.

2. The Department states that the motion to set aside the disclaimer was a motion to revoke the disclaimer. The Estate does not dispute that characterization, and therefore, we refer to it as a motion to revoke.

[¶9.]     Because the guardian ad litem indicated that he would not appeal the circuit court's decision, the Department moved to intervene and petitioned for reconsideration.[3] The court reconsidered its decision, but denied the Department relief on the merits. The court concluded that Arline's disclaimer was valid and not subject to revocation. The court also reaffirmed that Arline had already received her elective share of the estate when the Shipmans' joint resources were used during the marriage to pay for Arline's nursing home care.

[¶10.]     The Department appeals, raising two issues:

1.     Whether the circuit court erred in concluding that Arline was not entitled to an elective share because she had received her share of the estate during the marriage through Eugene's use of their joint resources to pay for her nursing home care.

2.     Whether the circuit court erred in denying the guardian ad litem's motion to revoke Arline's disclaimer of her elective share.

---

3.     Counsel for David, Arline's attorney-in-fact, also notified the Department that Arline did not have sufficient funds to pay for her continuing care and that she was entitled to Medicaid assistance from the Department. There is a pending administrative proceeding in which David and the Department are litigating whether a "transfer penalty" should be imposed on Arline's receipt of Medicaid benefits because she disclaimed her elective share. The Department is arguing for the imposition of a transfer penalty on Arline's benefits because Arline's disclaimer of her elective share was a transfer of her available resources. David is arguing there can be no transfer penalty because the circuit court's ruling—that Arline had already received her share of Eugene's estate during his lifetime—controls the outcome of the administrative proceeding. At oral argument in this case, the Department indicated that if the circuit court's ruling regarding Arline's elective share was not challenged, there would have been a judicial determination that there were no resources for Arline to disclaim, and therefore, Arline could not be penalized for a transfer of resources. The Department indicated that it intervened so it would not be collaterally estopped from arguing for the imposition of a transfer penalty in the administrative proceeding. The administrative proceeding has been stayed until this case is resolved.

*Decision*

*Jurisdiction to Hear This Appeal*

[¶11.] As a preliminary matter, the Estate challenges this Court's jurisdiction to hear the Department's appeal. The Estate points out that there were no pleadings attached to the Department's intervention application in circuit court as required by SDCL 15-6-24(c). The Estate also points out that the circuit court did not enter a formal order permitting the Department to intervene.

[¶12.] We first observe that the Department filed an "application" to intervene in circuit court "in order to protect its interests arising out of the surviving spouse's receipt of Medical Assistance from the Department." Along with its application, the Department filed a petition that the court reconsider its decision together with a memorandum in support of the petition. Those documents identified the Department's claims and put all parties on notice of the request to intervene, the grounds thereof, and the relief requested. The documents substantially complied with the motion and pleading requirements of SDCL 15-6-24(c).[4]

[¶13.] We also note that although the circuit court did not enter a formal order of intervention, it unmistakably granted the intervention request. In its memorandum decision on the petition to reconsider, the court specifically stated

---

4. SDCL 15-6-24(c) provides, in relevant part:

> A person desiring to intervene shall serve a motion to intervene upon the parties as provided in [SDCL] 15-6-5. The motion shall state the grounds therefor[e] and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought.

that "[the Department] now intervenes and asks this court to reconsider its decision." The court then proceeded to reconsider its decision on the merits. Therefore, although there was no formal order, there is no doubt that the circuit court granted the Department's request to intervene and reconsider the court's initial decision. Because intervention was allowed in circuit court, this Court has jurisdiction to consider the Department's appeal.

*Standard of Review*

[¶14.] The parties disagree on the proper standard of review for determining Arline's entitlement to an elective share of Eugene's estate. Under the pre-1995 statutes, entitlement to an elective share was an equitable matter to be determined by the circuit court. 1980 S.D. Sess. Laws ch. 205, § 5; SDCL 30-5A-5 (repealed 1995). "[T]he equitable determination in an elective share proceeding [was therefore] within the discretion of the [circuit] court and [would] not be overturned absent an abuse of that discretion." *In re Estate of Donahue*, 464 N.W.2d 393, 395 (S.D. 1990).[5] However, under the statutes enacted in 1995, the surviving spouse is now entitled to an elective share as a matter of right under a formula. SDCL 29A-

---

5.     The Estate cites *Estate of Karnen*, 2000 S.D. 32, 607 N.W.2d 32, for the proposition that the standard of review for elective share proceedings under the 1995 elective share statutes is abuse of discretion. In *Estate of Karnen*, the issue was whether the circuit court abused its discretion in using an inheritance tax table to calculate the value of a life estate for purposes of an elective share. *Id.* ¶¶ 22-25, 607 N.W.2d at 38-40. There was no statutory guidance on determining the value of the life estate, and therefore, we analyzed the court's use of inheritance tax tables under the abuse of discretion standard. However, today's case involves the interpretation of the elective share statutes. *Estate of Karnen* is inapposite because we review statutory interpretation de novo.

2-202. *See also* 1995 S.D. Sess. Laws ch. 167, § 148. Furthermore, the question in this case involves statutory interpretation; i.e. whether the current elective share statutes permit a charge against the elective share for the cost of nursing home care expended during the marriage. We apply de novo review to the interpretation of the elective share statutes. *See Conservatorship of Didier*, 2010 S.D. 56, ¶ 6, 784 N.W.2d 486, 489 ("Questions of law such as statutory interpretation are reviewed by the Court de novo.").

*Arline's Entitlement to an Elective Share*

[¶15.]      As previously noted, the pre-1995 version of South Dakota's elective share statute granted the circuit court discretion in determining a surviving spouse's elective share:

> [T]he court upon application of the surviving spouse shall award to the surviving spouse such elective share in the remaining augmented estate as is equitable taking into account all of the circumstances of all interested parties and the length and other circumstances of the marriage of the decedent and such surviving spouse[.]

SDCL 30-5A-5 (repealed 1995). *See also In re Estate of Pejsa*, 459 N.W.2d 243, 245 (S.D. 1990). Now, a surviving spouse has a right to an elective share of a deceased spouse's estate. SDCL 29A-2-202.[6] Under SDCL 29A-2-202, the surviving spouse's

---

6.      SDCL 29A-2-202 provides in relevant part:

> (a) The surviving spouse of a decedent who dies domiciled in this State has a right of election, under the limitations and conditions stated in this Part, to take an elective-share amount equal to the value of the elective-share percentage of the augmented estate, determined by the length of time the spouse and the decedent were married to each other, in accordance with the following schedule:

(continued . . .)

#26512

elective share is determined by formula. "SDCL 29A-2-202 is clearly a legislative determination to provide more uniformity in such awards and a corresponding reduction in the discretion of the [circuit] court which previously existed under SDCL 30-5A-5." *In re Estate of Elvik*, 1998 S.D. 125, ¶ 15 n.4, 587 N.W.2d 587, 590 n.4.

---

(. . . continued)

| If the decedent and the spouse were married to each other: | The elective-share percentage is: |
|---|---|
| . . . | |
| 15 years or more ..................................50% of the augmented estate | |

(b) If the sum of the amounts described in §§ 29A-2-207, 29A-2-209(a)(1), and that part of the elective-share amount payable from the decedent's probate estate and nonprobate transfers to others under § 29A-2-209(b) and (c) is less than $50,000, the surviving spouse is entitled to take a supplemental elective-share amount equal to $50,000, minus the sum of the amounts described in those sections. The supplemental elective-share amount is payable from the decedent's probate estate and from recipients of the decedent's nonprobate transfers to others in the order of priority set forth in § 29A-2-209(b) and (c).

(c) If the right of election is exercised by or on behalf of the surviving spouse, the surviving spouse's homestead allowance, exempt property, and family allowance, if any, are not charged against but are in addition to the elective-share and supplemental elective-share amounts.

(d) The right, if any, of the surviving spouse of a decedent who dies domiciled outside this state to take an elective share in property in this state is governed by the law of the decedent's domicile at death.

[¶16.] Nevertheless, the circuit court made its decision on what it described as a matter of equity. The circuit court explained that Arline "already received and benefitted from her rightful share, and her deceased husband's last will and testament is reflective of this fact." On the petition for reconsideration, the court expressly stated that it had "made an equitable determination that [Arline] Shipman had in fact already received her elective share of the marital estate when her late husband, Eugene Shipman, spent down one-half of their marital estate to pay for the nursing home facility care she received[.]" However, as previously noted, entitlement to an elective share under SDCL 29A-2-202 is no longer a matter of equity: it is a matter of right. The circuit court erred in applying equitable principles rather than SDCL 29A-2-202's statutory requirements in determining Arline's entitlement to an elective share.[7] Because Arline and Eugene had been married for over fifteen years, Arline had a *right* to an elective share that was fifty percent of Eugene's augmented estate. *See* SDCL 29A-2-202.

[¶17.] The circuit court also erred in determining that Arline had "already received her elective share" because, during the marriage, Eugene used marital assets to pay for Arline's nursing home care. First, the record reflects that these were joint marital assets, and the court did not consider Arline's ownership interest

---

7. Even if the circuit court had been authorized to make an equitable determination of Arline's entitlement to an elective share, the decision in this case was not equitable. Prior to Eugene's death, Eugene spent down $99,953.72 of Eugene and Arlines' joint resources to support Arline in a nursing home. But the Department's brief reflects that if she obtains an elective share, Arline would be entitled to approximately $208,388.15, less enforceable claims against the Estate. The circuit court also failed to consider Arline's contribution to the joint marital resources that were used for her nursing home care.

in those assets. Second, Arline's elective share comes from the augmented estate, *see* SDCL 29A-2-209, but expenses paid by one spouse for necessary support of the other during the marriage are not chargeable against the augmented estate. The augmented estate consists of certain transfers (not relevant here[8]) and property remaining after the first spouse dies. *See* SDCL 29A-2-203 (defining the augmented estate as the sum of the decedent's net probate estate, certain non-probate transfers, the surviving spouse's property, and certain non-probate transfers by the surviving spouse). And the Legislature expressly delineated what expenses may be charged against the augmented estate, but the cost of spousal care expended during the marriage is not one of them. *See* SDCL 29A-2-204 ("The value of the augmented estate includes the value of the decedent's probate estate, reduced by funeral and administration expenses, homestead allowance, family allowances, exempt property, and enforceable claims."). The circuit court acknowledged that "[c]learly, the money spent by Eugene Shipman on [Arline's] nursing home care is not a part

---

8.     The expense of nursing home care paid by one spouse for the support of the other during their lifetimes is not a "transfer" that is included in the augmented estate. Although a number of non-probate transfers are included in the augmented estate, transfers "to or for the benefit of . . . [the] surviving spouse" are excluded. SDCL 29A-2-205(2)-(3).

    The Estate, however, argues that Arline agreed to Eugene's expenditure of the funds for her nursing home care, and therefore, she is not entitled to now claim that those funds do not satisfy her elective share. The Estate relies on *In re Estate of Fries*, 782 N.W.2d 596, 605-06 (Neb. 2010). In *Estate of Fries*, the Nebraska Supreme Court stated that "[l]ogically, when a spouse agrees to a transfer of property that diminishes the eventual decedent's estate, the surviving spouse should not be allowed to reclaim the value of the transferred property in the augmented estate." *Id.* at 606. But, the Nebraska court was speaking of the value of "property" (assets) transferred to a third party rather than marital expenses paid by spouses to support each other during the marriage. *Estate of Fries* is inapposite.

of . . . the augmented estate[.]" Because the money spent by Eugene to support Arline during the marriage was not included in or chargeable against the augmented estate, Arline's elective share could not be satisfied by the value of those expenditures.

[¶18.]     More importantly, Arline's elective share could not be satisfied by money used during the marriage to pay Arline's nursing home expenses because those funds were utilized to fulfill Eugene's and Arline's duty to financially support themselves and each other. "A person shall support himself or herself and his or her spouse out of his or her property or by his or her labor." SDCL 25-7-1. As we noted in *In re Estate of Amundson*, 2001 S.D. 18, ¶ 16, 621 N.W.2d 882, 886: "Spouses owe a mutual duty of support during their lives[.]"[9] The joint funds Eugene spent on Arline's nursing home care were utilized to satisfy the marital duty of support during their marriage.

[¶19.]     In contrast, the elective share involves an independent duty for "the survivor's financial needs after the death of a spouse."[10] *See id.* After the death of

---

9.    Eugene's statutory duty to support Arline was not affected by the Department's assessment and calculation of their combined resources. *See* SDCL 28-6-20 (providing that the division of assets for purposes of determining eligibility for long-term medical assistance does not "affect any state statute concerning the duty to support a spouse[ ]").

10.   The Estate relies on comments to the Uniform Probate Code that identify the purpose of the elective share: "to prevent the surviving spouse from electing a share of the probate estate when the spouse has received a fair share of the total wealth of the decedent either during the lifetime of the decedent or at death by life insurance, joint tenancy assets, and other nonprobate arrangements." *See* Unif. Probate Code § 2-202 cmt. (pre-1990 version). In this case, Arline did not receive a fair share of Eugene's total wealth. Instead, Arline received marital support that Eugene was obligated to
                                                              (continued . . .)

one spouse, the duty of support "continues in favor of the survivor in the form of a claim on the decedent's estate[;]" i.e., by claiming an elective share. *See id.* The circuit court's reasoning fails to recognize that these duties are independent. Further, allowing the duty of support owed during the marriage to satisfy the duty of support owed when one spouse dies would effectively eliminate the elective share. Under the circuit court's reasoning, an estate of any deceased spouse could claim that other ordinary forms of support (food, clothing, and shelter) provided during the marriage satisfied the surviving spouse's elective share. This would completely eliminate the elective share statutes, which are intended "to protect a surviving spouse from disinheritance[.]" *See Estate of Karnen*, 2000 S.D. 32, ¶ 14, 607 N.W.2d at 36. Simply stated, marital assets used by spouses during their lives satisfy their marital duty of support. Assets in the augmented estate are used to satisfy the deceased spouse's independent duty of providing for the surviving spouse's financial needs after the deceased spouse's death. But assets utilized during the marriage to satisfy the mutual duty of marital support may not be used to satisfy a deceased spouse's additional duty to provide post-death support through the elective share.

[¶20.]    We conclude that Arline was entitled to an elective share that could not be satisfied by the spousal support Eugene was required to provide Arline during their marriage. Because Arline was entitled to an elective share, we next determine whether Arline's disclaimer was revocable by the guardian ad litem.

---

(. . . continued)

> provide during the marriage. We also note that this comment was not included in the post-1990 version of the Uniform Probate Code adopted in South Dakota.

*Disclaimer of Elective Share*

[¶21.]     SDCL 29A-2-801(a) authorizes disclaimers of a surviving spouse's elective share. Although the statute provides that the surviving spouse has a "right to disclaim irrevocably," *see id.*, "a surviving spouse, if he or she obtains court approval, has the right to revoke or rescind a disclaimer[,] . . . providing no adverse rights have intervened and no prejudice has been shown to the creditors of the widow or widower or to other persons interested in the estate." *In re Estate of Berg*, 355 N.W.2d 13, 15 (S.D. 1984). The disclaimer is revocable until the time period to file a disclaimer has lapsed. *See id.*

[¶22.]     The Department argues that the guardian ad litem's motion to revoke the disclaimer should have been granted because it was in the best interests of Arline and no other persons interested in the estate would have been prejudiced.[11] The Department also argues that the motion to revoke should have been granted because the disclaimer was used as an estate planning tool for the Shipmans' son's and grandchildren's inheritance at the expense of the Department. However, citing *In re Estate of Berg*, the Estate argues that Eugene's heirs were "predetermined" in the 2009 will, and those beneficiaries would suffer damage to their "legal rights" if Arline were allowed to revoke her disclaimer.

[¶23.]     We first consider whether the guardian ad litem was acting in Arline's best interests in moving to revoke the disclaimer. *See In re Guardianship of Stevenson*, 2013 S.D. 4, ¶ 16, 825 N.W.2d 911, 914-15 ("A . . . guardian ad litem . . . is appointed to act in a protected person's best interests."). As we have just ruled,

---

11.     There is no dispute that the motion was timely.

at the time the guardian was appointed, Arline was entitled to an elective share of Eugene's estate. The Estate does not dispute that Arline's failure to pursue her elective share would compromise Arline's Medicaid eligibility for nursing home care.[12] Thus, if the disclaimer were not revoked, Arline may lose Medicaid eligibility in addition to not receiving her fifty percent share of the augmented estate. Under the circumstances, it was in Arline's best interests to revoke the disclaimer. *See Estate of Wyinegar*, 711 A.2d 492, 495 (Pa. Super. Ct. 1998) (stating that it was in the institutionalized surviving spouse's best interests to seek his elective share because "[f]ailure to take the election against [the deceased spouse's will] could potentially compromise [the surviving spouse's] entitlement to continued [public] medical assistance in addition to denying him the benefit of the elective share").

[¶24.] We now address the Estate's claim of prejudice. *See Estate of Berg*, 355 N.W.2d at 15. The circuit court did not find that any person interested in the estate would be "prejudiced." Rather, after noting the requirements for revoking a disclaimer under *Estate of Berg*, the court indicated that the Shipmans' heirs were "predetermined" by Eugene's will.

[¶25.] The Estate argues that the beneficiaries under the will would be prejudiced if the disclaimer were revoked because their inheritance was predetermined and would be reduced. However, the rights of a beneficiary designated in a will are subject to the surviving spouse's elective share. *See* SDCL

---

12. We express no opinion regarding the Department's contention that Arline would lose Medicaid eligibility if the disclaimer is valid and enforceable. That issue remains to be decided in the pending administrative proceeding.

29A-3-101 ("The power of a person to leave property by will, and the rights of . . . devisees[ ] and heirs to the person's property are subject to the restrictions and limitations contained in [South Dakota's Uniform Probate Code] to facilitate the prompt settlement of estates. Upon the death of a person, that person's . . . property devolves to the persons to whom it is devised by will or . . . to the heirs, . . . subject to [the] . . . elective share of the surviving spouse[.]"). Therefore, the interest of the beneficiaries designated in Eugene's will was always subject to Arline's elective share. Those beneficiaries had no predetermined right to an inheritance that was free of Arline's elective share. Because no prejudice to interested parties has been demonstrated on this record, the circuit court erred in not granting the guardian's motion to revoke the disclaimer.[13]

[¶26.]       We finally note that Medicaid is for "individuals receiving nursing home . . . care services [that] are in fact poor and have not transferred assets that should be used to purchase the needed services before Medicaid benefits are made available." *In re Estate of Meland*, 2006 S.D. 22, ¶ 11, 712 N.W.2d 1, 4. "Medicaid . . . is not to be used as an estate planning tool." *Id.* But here, Arline's disclaimer was used as an estate planning tool.[14] The disclaimer was executed

---

13.    The Estate also argues that Arline's disclaimer was valid. We only note that the disclaimer was executed by Arline's son, who was her attorney-in-fact, the personal representative of Eugene's estate, and a beneficiary under the will who would take substantially more if the disclaimer he executed was valid. Because we determine that the guardian ad litem's motion to revoke the disclaimer should have been granted, we do not reach the question concerning the validity of such a disclaimer.

14.    The circuit court disagreed, reasoning:

(continued . . .)

contemporaneously with Eugene's will in an attempt to obtain Medicaid benefits while simultaneously transferring the value of Arline's elective share to the Shipmans' son and grandchildren. The circuit court should have granted the guardian ad litem's motion to revoke the disclaimer.

[¶27.]     Reversed and remanded for Arline to obtain her elective share.

[¶28.]     GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.

---

(. . . continued)

> This disclaimer was not done as an estate planning tool, but was done to help Eugene preserve his assets because he assumed that he would be the surviving spouse, and he assumed he would need the assets to provide for his own daily needs.

But at the time the disclaimer and will were executed, they did nothing to provide for Eugene's daily needs while he was alive. They were used to preserve his son's and grandchildren's future inheritance, the very essence of estate planning. David, Arline's attorney-in-fact, admitted that the disclaimer was executed because "Dad had spent down Mom's share of the money that was to be spent down for Social Services, and that was his—trying to get his wishes that the kids would get something; that we did that so—to try to protect what was left."