In the MATTER OF the GUARDIANSHIP OF
ELIZABETH M. H., a person under the age of 18:

TINA B., Petitioner,

CYNTHIA K.-S. and DONALD M.,
Petitioners-Appellants-Cross-Respondents,

v.

RICHARD H.,
Respondent-Respondent-Cross-Appellant. †
[Case No. 2013AP2534]

In the INTEREST OF ELIZABETH M. H.,
a person under the age of 18:

RICHARD H., Petitioner-Appellant,†

v.

TINA B., Respondent,

CYNTHIA K.-S. and Donald M.,
Respondents-Respondents.
[Case No.2013AP2600]

Court of Appeals

*Submitted on briefs May 8, 2014.—Decided November 13, 2014.*

2014 WI App 123

(Also reported in 857 N.W.2d 432.)

† Petition for review filed.

On behalf of the petitioners-appellants-cross-respondents and respondents-respondents, the cause was submitted on the briefs of *Thomas A. Maroney* of *Maroney & Parry, LLC.*, Waupaca.

On behalf of the respondent-respondent-cross-appellant and petitioner-appellant, the cause was sub-

mitted on the briefs of *Theresa J. Schmieder* of *Schmieder Law Office, LLC.*, Green Bay.

Before Blanchard P.J., Lundsten and Kloppenburg, JJ.

¶ 1. BLANCHARD, P.J. This appeal involves a dispute between Richard H., the biological father of Elizabeth H., and Elizabeth H.'s foster parents over placement of and guardianship over Elizabeth H. Richard H. petitioned for change of placement of Elizabeth H. from the home of her foster parents to Richard H.'s home pursuant to WIS. STAT. § 48.357 (2011–12).[1] In response, the foster parents objected to change of placement and requested a hearing. The foster parents also requested guardianship over Elizabeth H. under Chapters 48, the "Children's Code," and 54, "Guardianships and Conservatorships."

¶ 2. After consolidating Richard H.'s change of placement petition and the foster parents' guardianship petitions and holding a joint hearing, the circuit court denied Richard H.'s change of placement petition and granted the foster parents' guardianship petitions under both Chapters 48 and 54.

¶ 3. Richard H. filed a postdisposition motion challenging all of these decisions. In response, the circuit court reversed its position on the foster parents' Chapter 54 guardianship petition and dismissed that petition. The court concluded that the court had lost competency over the Chapter 54 petition when it held the joint hearing more than 90 days after the foster parents filed the petition, in violation of a statutory limitation period. The circuit court left in place its prior

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

decisions to deny Richard H.'s change of placement petition and to grant the foster parents' Chapter 48 guardianship petition.

¶ 4. The foster parents now appeal the circuit court's decision to dismiss the Chapter 54 guardianship petition, and Richard H. cross-appeals the circuit court's decisions regarding his change of placement petition.[2] For the following reasons, we agree with the circuit court's decisions on the postdisposition motion and accordingly affirm.

## BACKGROUND

¶ 5. Elizabeth H. was born in September 2005. Shortly after her birth, the Waupaca County Department of Human Services (hereafter "the County") filed a petition for Child in Need of Protection and Services and she was temporarily removed from the home of Richard H. and her biological mother, Tina B. After a hearing in November 2005, a dispositional order placed her back in the home of her biological parents and required Richard H. and Tina B. to comply with a number of conditions of custody.

---

[2] Tina B., Elizabeth H.'s biological mother, did not file separate briefing on appeal, but instead joins with the briefing of the foster parents.

Separately, Richard H. requests that we "vacate the orders granting guardianship under chapter 48." However, separate from his arguments for change of placement, we cannot discern any argument from Richard H. regarding why it was error for the circuit court to award the Chapter 48 guardianship and why we should now vacate it. The only supporting argument Richard H. may mean to make on this topic is that we should vacate the Chapter 48 guardianship in the interest of justice. As we explain further in the last section of this opinion, this interest of justice argument is entirely undeveloped, and we reject it on that basis. Thus, we do not address the court's decision to grant the Chapter 48 petition further.

209

¶ 6. On February 15, 2006, the County sought and the court granted an order temporarily removing Elizabeth H. from the home of her biological parents and placing her in protective custody due to alleged failures of her parents to comply with their terms of custody in the CHIPS order and allegations of domestic abuse. The County then petitioned to change placement of Elizabeth H. from the home of her biological parents to a foster home, which was granted. Elizabeth H. was placed in one foster home from February 2006 to February 2007, and then placed in the home of her current foster parents, where she has remained since.

¶ 7. Pursuant to a CHIPS dispositional order and permanency plan put in place when Elizabeth H. was first placed in foster care, Richard H. was granted supervised visitation with Elizabeth H. Richard H. was eventually allowed unsupervised and overnight visitation in his home. Richard H. was required to abide by a number of conditions in order to have Elizabeth H. returned to his home, including that he "refrain from any negative parenting," that he "maintain absolute sobriety," and that he "cooperate with [County] workers at all times," including that "[a]t no time shall [he] threaten, become belligerent, swear or use verbally abusive language towards [County staff] or other[] worker[s] on the case."

¶ 8. On January 24, 2012, Richard H. filed a petition seeking placement of Elizabeth H. in his home pursuant to Wis. Stat. § 48.357.[3]

---

[3] While Richard H. did not identify a specific subpart of Wis. Stat. § 48.357 in his petition, § 48.357(2m)(a) provides that a "parent" who is "bound by [a] dispositional order . . . may request a change in placement under this paragraph."

¶ 9. On February 10, 2012, Elizabeth H.'s foster parents filed a petition for appointment as guardians of Elizabeth H. pursuant to Wis. Stat. § 54.34.

¶ 10. On February 21, 2012, the foster parents filed an objection to Richard H.'s motion for change of placement, requesting a hearing pursuant to Wis. Stat. § 48.357 and Wis. Stat. § 48.64.

¶ 11. On April 30, 2012, the County sent a notice to the foster parents, pursuant to Wis. Stat. § 48.64, that it was requesting change of placement of Elizabeth H. from their home to the home of Richard H., on the grounds that Richard H. "has complied with the requirements of the [dispositional] order."[4]

¶ 12. The foster parents filed an objection to the County's notice and requested a hearing pursuant to Wis. Stat. § 48.64.[5]

---

[4] Wisconsin Stat. § 48.64(1m) provides in part:

If a child has been in a foster home . . . for 6 months or more, the agency shall give the head of the home written notice of intent to remove the child, stating the reasons for the removal. The child may not be removed before completion of the hearing under sub. (4)(a) or (c), if requested, or 30 days after the receipt of the notice, whichever is later . . . .

[5] The foster parents did not specify the subpart of Wis. Stat. § 48.64 under which they sought relief, but the circuit court treated their request as a request for a hearing pursuant to § 48.64(4)(c), which provides in pertinent part:

The circuit court may call a hearing, at which the head of the home and the supervising agency under sub. (2) shall be present, for the purpose of reviewing any decision or order of that agency involving the placement and care of the child. If the child has been placed in a foster home or in the home of a relative other than a parent, the foster parent or relative may present relevant evidence at the hearing. The petitioner has the burden of proving by clear and convincing evidence that the decision or order issued by the agency is not in the best interests of the child.

211

¶ 13. On May 4, 2012, the foster parents filed a petition for appointment as guardians of Elizabeth H. pursuant to Wis. Stat. § 48.977.

¶ 14. The court entered an order consolidating the petitions for change of placement, Chapter 54 guardianship, and Chapter 48 guardianship, and ordered a joint hearing on these petitions that took place over eight non-consecutive days during the months of June, July, and August 2012. Witnesses included social worker Reynolds, Richard H., and the foster mother.

¶ 15. At the close of the hearing, the circuit court denied Richard H.'s petition for change of placement and granted the foster parents' Chapter 48 and Chapter 54 petitions for guardianship.[6] Regarding change of placement, the circuit court explained that:

> Birth parents have constitutionally protected rights to raise their children. However, if the government becomes involved due to the inaction and non-compliance with conditions for many years, such behavior triggers an erosion of the constitutional law protecting the relationship between parent and a child.

The court found that Elizabeth H. had been outside Richard H.'s residence under a CHIPS order since her removal at the age of four months. The court concluded that "a change of placement would not be in [Elizabeth H.'s] best interests" due to considerations that included the following: Elizabeth H. had lived in the home of her foster parents for more than five years; Elizabeth H. had developed a close relationship with her foster

---

[6] Pursuant to Wis. Stat. § 48.977(5)(a), the court appointed the foster parents as guardians of Elizabeth H. with "full powers enumerated under § 48.023, Wis. Stats." Pursuant to Wis. Stat. § 54.46(2), the court appointed the foster parents as guardians of Elizabeth H. as a minor.

212

parents; she exhibited emotional problems attributed to visitation with Richard H.; and Richard H. had failed to meet all of his conditions for return, including requirements that he complete anger management treatment and not demonstrate inappropriate anger toward County staff, Elizabeth H., and others. The court concluded that "[p]assage of time, abandonment and lack of parental responsibility indicate that it is inappropriate to now change placement."

¶ 16. Richard H. filed a postdisposition motion making a number of arguments, including that the court lost competency to grant the foster parents' Chapter 54 guardianship petition by holding a timely hearing, in violation of WIS. STAT. § 54.44(1)(a), which requires that "[a] petition for guardianship . . . shall be heard within 90 days after it is filed."

¶ 17. The circuit court agreed and granted Richard H.'s request to dismiss the foster parents' Chapter 54 guardianship petition due to lack of competency. The court concluded that it lost competency over the petition by failing to hold a hearing within 90 days after the petition was filed. The foster parents appeal this portion of the circuit court's decision.

¶ 18. The circuit court rejected Richard H.'s other postdisposition arguments and left in place its denial of his change of placement petition. Richard H. cross-appeals this portion of the circuit court's decision.[7]

## DISCUSSION

### I. THE FOSTER PARENTS' APPEAL

¶ 19. The foster parents' argument that the circuit court erred in dismissing their Chapter 54 guard-

---

[7] Pursuant to an order from this court dated February 6, 2014, these appeals have been consolidated.

ianship petition is based on alleged waiver by Richard H. The foster parents argue that the court should not have decided that it lost competency over the petition, based on the 90–day limitation period provided in Wis. Stat. § 54.44(1)(a), because Richard H. waived a challenge based on the limitation period when he agreed to a hearing date that he knew to be outside of the limitation period. The foster parents point out that during a scheduling hearing, the court and the parties set a date for the joint hearing on the petition for change of placement and the guardianship petitions. The foster parents' attorney alerted the court and other parties that the Chapter 54 guardianship petition "has to be heard within 90 days of its filing." However, with the agreement of counsel for Richard H. and the foster parents, the court scheduled the joint hearing for a date outside of the statutorily mandated 90 days.

¶ 20. Richard H. does not dispute that his attorney agreed to a hearing date that fell beyond the limitation period set by Chapter 54. However, he relies on case law for the proposition that a party cannot waive a challenge to the competency of a court based on a statutory limitation period, such as that in Wis. Stat. § 54.44(1)(a). For reasons explained below, we agree with Richard H. that, under the authority he cites, he could not waive his competency challenge here. Accordingly, we affirm the circuit court's decision to dismiss the Chapter 54 guardianship petition.

¶ 21. Whether a circuit court has lost competency to proceed on a matter is a question of law that we review de novo. *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶ 7, 273 Wis. 2d 76, 681 N.W.2d 190.

¶ 22. We first clarify that the foster parents do not dispute that the word "shall" in Wɪs. Sᴛᴀᴛ. § 54.44(1)(a) sets forth a mandatory requirement that the court must set a hearing date within 90 days of the filing of the petition. *See Village of Elm Grove v. Brefka*, 2013 WI 54, ¶ 18, 348 Wis. 2d 282, 832 N.W.2d 121 (explaining that failure to abide by mandatory statutory provisions governing the timing of circuit court actions that are central to a statutory scheme results in loss of court competency to act). Rather, the only argument the foster parents make is that Richard H. waived his challenge to the court's competency before the circuit court. We now turn to this issue.

¶ 23. In *Mikrut*, our supreme court articulated the general rule, relied on by the foster parents here, that "challenges to the circuit court's competency are waived if not raised in the circuit court." 273 Wis. 2d 76, ¶ 30. However, the *Mikrut* court noted a longstanding qualification to the general rule, namely, an exception for limitation periods within which courts must act as mandated by statutes: " '[W]e have consistently ruled that a court's loss of power *due to the failure to act within statutory time periods* cannot be stipulated to nor waived.' " *Id.*, ¶ 25 (quoting *Green Cnty. Dep't of Human Servs. v. H.N.*, 162 Wis. 2d 635, 657, 469 N.W.2d 845 (1991) (hereafter *B.J.N.*)). In *B.J.N.*, the court cited authority dating back to 1938 for this exception to the general rule of waiver. 162 Wis. 2d at 657 & n.19.

¶ 24. Further, while the *Mikrut* court left open the question of whether there may be situations in which a party could waive a competency challenge based on a statutory limitation period, 273 Wis. 2d 76, ¶ 30, in the following year the court resolved the issue. In *Sheboygan County Department of Social Services v.*

*Matthew S.*, 2005 WI 84, 282 Wis. 2d 150, 698 N.W.2d 631, the court went a step further and held that "a competency challenge such as the one here, based on the court's failure to act within the statutory time periods listed within [Wis. Stat.] ch. 48 [(2003–04)], cannot be waived, even though it was not raised in the circuit court." *Id.*, ¶ 30; *see also State v. Michael S.*, 2005 WI 82, ¶ 73, 282 Wis. 2d 1, 698 N.W.2d 673 (explaining that the *Mikrut* waiver rule does not control the outcome of a case involving a statutory time period because *Mikrut* "left undisturbed" this issue).

¶ 25. In a recent unpublished opinion, *Lipp v. Outagamie County Department of Health and Human Services*, No. 2011AP152, slip op. (WI App June 5, 2012), this court applied *Mikrut* and *Matthew S.* to resolve the question of whether a party can waive a competency challenge based on a previous version of the statutory limitation period at issue here, Wis. Stat. § 54.44(1) (2009–10). *Id.*, ¶¶ 9–12. In *Lipp*, the circuit court granted the County's petition to put the mother of Lipp under guardianship. *Id.*, ¶ 8. On appeal, Lipp argued that the court lost competency to address the guardianship petition because the court failed to complete hearings on the petition within the 90–day statutory limitation period. *Id.*, ¶ 10. The County responded that Lipp could not object to the circuit court's competency on appeal because she had not raised a competency objection before the circuit court. *Id.*, ¶ 11.

¶ 26. The *Lipp* court noted that the court in *Matthew S.* "determined that the waiver rule could not be applied to a court's failure to hold a hearing on a termination of parental rights petition within the statutorily mandated [limitation period]." *Id.*, ¶ 12. "Based on *Mikrut* and *Matthew S.*, we must conclude Lipp . . . could not waive a competency challenge centered on the

court's failure to hear the guardianship petition within the statutorily mandated ninety days." *Id.*, ¶ 12.

¶ 27. We find *Lipp* to be persuasive. The foster parents argue that we should not rely on the reasoning of *Lipp* for two reasons, each of which we now address and reject.

¶ 28. First, the foster parents argue that the *Lipp* court erred in basing its decision on *Matthew S.*, because *Matthew S.* is "no longer controlling legal authority" because legislation that took effect after *Matthew S.*, but before this action, amended WIS. STAT. § 48.315 to provide, in pertinent part:

> Failure by the court or a party to act within any time period specified in this chapter does not deprive the court of . . . competency to exercise that jurisdiction. Failure to object to a period of delay or a continuance waives any challenge to the court's competency to act during the period of delay or continuance.

*See* § 48.315(3).

¶ 29. This argument may hit the Chapter 48 target in other cases, but it misses the Chapter 54 target here. *Matthew S.* is a Chapter 48 case, and the new statute affects Chapter 48 proceedings. However, the foster parents fail to explain why we should conclude that the legislature, presumed to be aware of the case law we reference above regarding waiver and competency, would have amended Chapter 48 with the *silent intent* to affect Chapter 54. *See Progressive N. Ins. Co. v. Romanshek*, 2005 WI 67, ¶ 52, 281 Wis. 2d 300, 697 N.W.2d 417 (a construction given to a statute by the court becomes a part of the statute, barring subsequent pertinent legislation; legislative inaction following judicial construction of a statute evinces legislative approval of the interpretation). The fact that the legisla-

ture made a subsequent policy decision to apply the waiver rule in the particular context of Chapter 48 highlights that the legislature is aware of its authority to enact a waiver rule. It has not done so in the Chapter 54 context, and the rule stated in *Matthew S.* continues to apply to Chapter 54 cases.

¶ 30. As a second argument against following *Lipp*, the foster parents contend that we should follow the reasoning of a per curiam opinion of this court. A per curiam is not citable authority, and we reject this argument on that ground. *See* WIS. STAT. RULE 809.23(3).

¶ 31. As a final set of thinly developed arguments, not directly related to *Lipp*, the foster parents argue that we should conclude that Richard H. waived his objection to the court's competency because Richard H. was not prejudiced by the delay, "there was extensive discovery which had to be completed," and the "continuance was for only as long as necessary." These are policy reasons to amend the statute to include a provision allowing for the extension of time limits for hearings on a guardianship petition when there is good cause for such an extension. Whatever the merits of these policy positions, they are for the legislature to decide, not this court.

¶ 32. Based on the forgoing reasoning, we conclude that Richard H. did not waive his challenge to the court's competency over the Chapter 54 guardianship petition. Thus, we affirm the circuit court's decision on the postdisposition motion to dismiss this guardianship petition.

## II. RICHARD H.'S CROSS-APPEAL

¶ 33. On cross-appeal, we understand Richard H. to challenge only the circuit court's decision to deny his petition for change of placement. He makes four argu-

218

ments as to why the circuit court erred: (1) Richard H. was denied his right to due process when the circuit court held a joint hearing on his change of placement petition pursuant to Wis. Stat. § 48.357, the foster parents' request for a hearing under Wis. Stat. § 48.64, and the foster parents' guardianship petitions; (2) the circuit court improperly exercised its discretion in applying "best interests of the child" as the standard; (3) the circuit court erred by refusing to permit the County to participate as a party in the proceedings and in sequestering a witness from the County; and (4) we should set aside the circuit court's decision in the interest of justice because the real controversy was not fully tried.

## A. Consolidation; Joint Hearing

¶ 34. Richard H. argues that by holding a joint hearing on the four requests before the court—his petition to change placement under Wis. Stat. § 48.357, the foster parents' request for a hearing pursuant to Wis. Stat. § 48.64, and their Chapter 48 and Chapter 54 petitions for guardianship—the court (1) "effectively denied Richard H. his right to procedural due process by impermissibly elevating the foster parents . . . to the status of a full party" in connection with the change of placement petition and (2) impermissibly placed "his parenting in competition with that of the foster parents." Richard H. adds that because the petitions were heard together,

> The focus of the hearing was not on whether Richard H. had completed conditions [required for return of Elizabeth H.], was not on whether he now had rehabilitated, had a relationship with his child, had a suitable home, but rather was a multi-day character assassination as Richard H. was vilified.

219

¶ 35. We begin by clarifying that Richard H. does not object to the fact that the court entered an order consolidating these matters for consideration by the court as a general matter. Rather, Richard H.'s sole argument is that the court violated his due process rights in connection with his petition for a change of placement by conducting a joint hearing. He contends that the joint hearing allowed the court to hear and consider, on the placement issue, unfairly prejudicial evidence regarding the foster parents' parenting abilities, rather than limiting evidence to Richard H.'s rehabilitation and fulfillment of his required conditions.

¶ 36. The foster parents respond to Richard H.'s joint hearing argument, in part, by arguing that Richard H. forfeited this argument by failing to preserve it below when both his first and second attorneys agreed to a joint hearing before the circuit court. At a scheduling hearing, in response to a question from the circuit court regarding consolidation of Richard H.'s petition for change of placement and the foster parents' petitions for guardianship, Richard H.'s then attorney stated: "I think it would not be in the interest of judicial economy to try these matters separately." At another scheduling hearing, the court asked Richard H.'s second attorney if he had "any objection to consolidation of the two guardianship petitions and the petition for change of placement being heard at the same time?" Richard H.'s second attorney responded that he had "no objection" to a joint hearing.

¶ 37. Richard H. does not dispute these facts. Instead, he argues that he preserved this argument by raising it in his postdisposition motion before the circuit court.

¶ 38. We agree with the foster parents that because Richard H., through his counsel, affirmatively agreed to a joint hearing, the argument Richard H. now advances that a joint hearing was inappropriate was not preserved before the circuit court and, thus, we need not address it now. *See State v. Huebner*, 2000 WI 59, ¶ 10, 235 Wis. 2d 486, 611 N.W.2d 727 ("Issues that are not preserved at the circuit court . . . generally will not be considered on appeal."). Richard H.'s contention that he preserved this argument by raising it in his postdisposition motion fails because it sidesteps the policies underpinning the rule of waiver. *See, e.g., State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999) ("The waiver rule exists to cultivate timely objections. Such objections promote both efficiency and fairness."). Richard H.'s postdisposition motion came too late to timely and efficiently remedy the due process problems he now asserts resulted from holding a joint hearing.[8]

¶ 39. Moreover, even if we were to assume that Richard H. preserved the argument he now advances, we would still reject it, because Richard H.'s argument is for the most part conclusory. He fails to explain what evidence was presented during the joint hearing that would not have otherwise been presented during the hearing on the change of placement. He similarly fails to explain why a joint hearing precluded the circuit court from being able to apply relevant, and only relevant, evidence to the placement issue.

---

[8] If Richard H. means to argue that his counsel was ineffective by agreeing to the proposal of a joint hearing on these topics, we do not discern a developed argument to this effect on appeal, and we reject it on that basis. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992).

¶ 40. At one point in his brief-in-chief on appeal, Richard H. asserts that the foster parents had only "limited procedural rights" to be heard because his change of placement petition was filed pursuant to Wis. Stat. § 48.357. According to § 48.357(2r), foster parents have only "a right to be heard" by "mak[ing] a written or oral statement during the hearing or . . . submit[ting] a written statement prior to the hearing." However, as Richard H. later acknowledges in the same brief, the foster parents requested a hearing pursuant to Wis. Stat. § 48.64.[9] Section (4)(c) of this statute "expressly recognizes the right of foster parents to participate and present evidence in hearings that involve 'the placement and care' of a child in their household." *Richard D. v. Rebecca G.*, 228 Wis. 2d 658, 661, 599 N.W.2d 90 (Ct. App. 1999) (quoting Wis. Stat. § 48.64(4)(c) (1999–2000), the relevant provisions of which are the same as those at issue here).

¶ 41. Richard H. may mean to argue that the foster parents could not invoke Wis. Stat. § 48.64(4)(c) because Richard H., rather than the County, filed the petition for change of placement, and § 48.64(4)(c) provides for a hearing "for the purpose of reviewing any *decision or order of [the] agency* involving placement and care of the child." (Emphasis added.) However, even if we assume without deciding the validity of the

[9] Richard H. states on appeal that the foster parents' request for a hearing did not seek relief "specifically under Wis. Stat. § 48.64(4)(c)," the relevant section of the statute. It is true that the foster parents did not identify an existing subsection of § 48.64 under which they sought a hearing. However, the circuit court treated the foster parents' motion as a motion under § 48.64(4)(c), as Richard H. acknowledges in his briefing on appeal. If Richard H. means to develop this assertion into an argument, it is not unclear to us what that argument is.

premise underlying this proposition, namely, that foster parents cannot request a hearing pursuant to § 48.64(4)(c) when a biological parent, rather than the County, is the petitioner under WIS. STAT. § 48.357 for a change of placement, that premise does not apply here. This is because the County, agreeing with Richard H. that reunification was called for, notified the foster parents that it was initiating a change of placement, as it was statutorily required to do pursuant to § 48.64(1m), and the foster parents requested a § 48.64(4)(c) hearing on that decision. *See* § 48.64(1m) ("If a child has been in a foster home . . . for 6 months or more, the agency shall give the head of the home written notice of intent to remove the child, stating the reasons for the removal. The child may not be removed before completion of the hearing under sub. (4)(a) or (c), if requested . . . ."). Richard H. does not dispute that the foster parents could rely on § 48.64(4)(c) to request a hearing on the County's decision to change placement. Therefore, because the foster parents requested a hearing on the change of placement pursuant to § 48.64(4)(c), they were entitled to "be present" and "present relevant evidence" at the hearing.

¶ 42. There is authority for the proposition that the right of foster parents to participate in a hearing pursuant to WIS. STAT. § 48.64(4)(c) is not without limit and that the interests of foster parents are not necessarily equal to those of a biological parent. *See Sallie T. v. Milwaukee Cnty. Dep't of Health and Human Servs.*, 212 Wis. 2d 694, 703–07, 570 N.W.2d 46 (Ct. App. 1997) (disagreeing with the proposition that in a hearing conducted pursuant to § 48.64(4)(c) the court must treat the foster parent and biological parent "as equals"), *aff'd*, 219 Wis. 2d 296, 581 N.W.2d 182 (1998),

223

*abrogated on other grounds by Mikrut*, 273 Wis. 2d 76. However, Richard H. fails to point to any evidence presented by the foster parents at the joint hearing that elevated their participation here beyond what is permissible under § 48.64(4)(c). This court will not act as an advocate for Richard H., searching the record for evidence that might support his argument. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992).

¶ 43. For these reasons, we reject Richard H.'s argument that the circuit court erred in holding a joint hearing.

### B. Best Interests of the Child Standard

¶ 44. Richard H. argues that the circuit court "improperly applied the best interests of the child as the determining standard" in its decision to deny the change of placement petition and, in doing so, the court improperly decided placement based on a comparison between Richard H.'s ability to parent and that of the foster parents. We also understand Richard H. to argue that even if the court applied the correct standard, it improperly exercised its discretion by relying on clearly erroneous findings of fact. We reject both arguments for the following reasons.

¶ 45. Whether to continue placement with the foster parents or change it to Richard H. "is a matter wholly within the [circuit] court's discretion." *See Richard D.*, 228 Wis. 2d at 670. To find that the court improperly exercised its discretion, we "must find either that the circuit court has not exercised discretion or that it has exercised discretion on the basis of an error of law or irrelevant or impermissible factors." *Barstad v. Frazier*, 118 Wis. 2d 549, 554, 348 N.W. 479 (1984).

¶ 46. Richard H.'s argument that the circuit court improperly applied a "best interests of the child" standard is premised on *Barstad*, which, according to Richard H., explicitly rejected a "best interests" test in custody or placement disputes between parents and third parties. As we explain below, Richard H.'s *Barstad* argument fails because *Barstad*, and case law interpreting *Barstad* in the placement context, permit courts to consider the best interests of a child in placement decisions where there are compelling reasons to conclude that a biological parent should not have placement.

¶ 47. In *Barstad*, the court addressed a custody dispute between a biological mother and a biological grandmother. *Id.* at 551–52. The circuit court awarded custody to the grandmother, with whom the child had been living for approximately three years. *Id.* at 551–53. The circuit court explained that this decision was " 'based on the present stability which the grandmother has given and which is reflected in the happy, well-adjusted boy . . . as contrasted to the unknown future of [the biological mother].' " *Id.* at 553.

¶ 48. The supreme court reversed the circuit court and awarded custody to the biological mother. *Id.* at 555. In reversing the circuit court's decision, the *Barstad* court explained that "the 'best interests of the child' is not the proper standard in custody disputes between a natural parent and a third party . . . ." *Id.* at 554–55. However, the court went on to clarify that this statement does not mean that a biological parent is always entitled to custody:

> Under ordinary circumstances, a natural parent has a protected right under both state law and the United States Constitution to rear his or her children free from governmental intervention. Absent compel-

ling reasons narrowly defined, it is not within the power of the court to displace a fit and able parent simply because in the court's view someone else could do a "better job" of "parenting."

. . . .

We conclude that the rule to be followed in custody disputes between parents and third parties is that a parent is entitled to custody of his or her children unless the parent is either unfit or unable to care for the children or there are compelling reasons for awarding custody to a third party. Compelling reasons include abandonment, persistent neglect of parental responsibilities, extended disruption of parental custody, or other similar extraordinary circumstances that would drastically affect the welfare of the child. If the court finds such compelling reasons, it may award custody to a third party if the best interests of the children would be promoted thereby.

*Id.* at 567–69.

¶ 49. This court has since interpreted the holding in *Barstad* in the placement context, which is guided by the requirement in WIS. STAT. § 48.64(4)(c) that the court must consider the "best interests of the child" when deciding issues regarding placement. *See Richard D.*, 228 Wis. 2d 658.[10] In *Richard D.*, we harmonized the

---

[10] The statutory formulations differ slightly. WISCONSIN STAT. § 48.64(4)(c) (2011–12) requires that "[t]he petitioner has the burden of proving by clear and convincing evidence that the decision or order issued by the agency is not in the best interests of the child." The statutory provision that the court interpreted in *Richard D. v. Rebecca G.*, 228 Wis. 2d 658, 599 N.W.2d 90 (Ct. App. 1999) provided, " 'The court shall determine the case so as to promote the best interests of the child.' " *Id.* at 665 (quoting § 48.64(4)(c) (1999–2000)). However, Richard H. does not argue that this difference matters for the purposes of this appeal.

226

*Barstad* court's potentially conflicting application of the "best interests of the child" as follows:

> [W]e harmonize *Barstad*'s comment that "[i]f the court finds such compelling reasons, it may award custody to a third party if the best interests of the children would be promoted thereby," *id.*, 118 Wis. 2d at 568–69, 348 N.W.2d at 489, with its earlier statement relied on by Rebecca G., that "the 'best interests of the child' is not the proper standard in custody disputes between a natural parent and a third party," *id.*, 118 Wis. 2d at 554–55, 348 N.W.2d at 482, to mean that unless the birth-parent has either done something, or failed to do something, to trigger erosion of the constitutional wall that prevents the State from intruding on the birth-parent's constitutionally protected rights, the fact that the child might be better off somewhere else is an insufficient reason to breach that wall.

*Richard D.*, 228 Wis. 2d at 663 n.4. The *Richard D.* court further explained that conduct of a biological parent erodes this constitutional wall when the parent "has otherwise acted in a way that is inconsistent with core parental responsibilities, necessitating governmental intervention so that the child is no longer under the birth-parent's control." *Id.* at 664. In this circumstance, "there is no constitutional hurdle" preventing the determination of a child's placement based on "what is in his or her best interests." *Id.*

¶ 50. Based on this case law, we conclude that the circuit court applied the correct legal standard in its decision not to change placement. The court explained that a compelling reason existed for allowing the foster parents to retain placement, namely, Elizabeth H.'s removal from and extended placement outside of Richard H.'s home under a CHIPS order. The court con-

cluded that "a change of placement would not be in [Elizabeth H.'s] best interests" due to, among other factors, the length of time she has lived with her foster parents, her close relationship with them, the fact that she exhibited emotional problems attributed to visitation with Richard H., and Richard H.'s failure to meet certain conditions of return during that time.

¶ 51. Richard H. argues that testimony of social worker Reynolds supports a finding that he fulfilled all the conditions of return established in the dispositional order and, thus, it was in Elizabeth H.'s best interests to change placement. We understand this argument to be that, even if the court correctly applied the law under *Barstad* and its progeny, explained above, the court improperly exercised its discretion by relying on an erroneous finding of fact, namely, that Richard H. had failed to meet his conditions of return. Richard H. does not, however, develop his references to Reynolds' testimony into an argument that the circuit court's finding that Richard H. had not met all of his conditions of return was clearly erroneous. As the foster parents point out, there was extensive testimony that Richard H. had not met all of his conditions of return. Moreover, the circuit court was not required to conclude that a change of placement would be in Elizabeth H.'s best interests even if it found that Richard H. had fulfilled all the required conditions of return. *See Sallie T.*, 219 Wis. 2d at 311 ("Compliance with the conditions of a CHIPS dispositional order does not create a presumption that it is in the child's best interests to be returned to the biological parents.") *abrogated on other grounds by Mikrut*, 273 Wis. 2d 76; *see also Richard D.*, 228 Wis. 2d at 672 ("[A] long history of neglect or abandonment, coupled with a strong bonding by a child with its

caretakers, would permit the courts, consistent with the United States and Wisconsin constitutions, to preserve the *status quo* and leave the child in a happy, nurturing home of a caring and loving non-parent, irrespective of whether the birth-parent was in compliance with the terms of a court order.").

¶ 52. For these reasons, we conclude that the circuit court correctly applied the appropriate legal standards and properly exercised its discretion in denying Richard H.'s petition for change of placement.

### C. County as a Party; Witness Sequestration

¶ 53. On the first day of the hearing, Tina B.'s counsel moved the court for sequestration of witnesses, including social worker Reynolds. Counsel for Tina B. explained:

> I'll make a request that anybody that will be testifying be excluded from the courtroom, and that would include Ms. Reynolds. I don't see that the [County] technically is a party here.[11]

Counsel for Richard H. responded that the County was a party and argued, on this basis, that Reynolds should not be sequestered. The court determined, over Richard H.'s objection, that the County was not a party and that "no exception [to sequestration] appears to apply," and granted the motion for sequestration.

¶ 54. Richard H. now argues that it was error for the court, "over objection," to decide "that the [County] was not a party to the proceedings and den[y] the

---

[11] As the circuit court noted, the County's corporation counsel had represented the County at other stages of the proceedings, but was not present at this hearing.

229

request of Richard H.'s attorney that the social worker be permitted to remain in the courtroom during the proceedings." Assuming without deciding for the purposes of this appeal that the County was a party and should have been treated as such throughout the proceedings, Richard H.'s argument still fails for two reasons.

¶ 55. First, the only argument regarding the County's involvement in or status at the hearing that Richard H. made at the time of the hearing, and that he now advances, is without merit. Richard H. objected to the court's determination that social worker Reynolds should be sequestered. WISCONSIN STAT. § 906.15 controls witness sequestration and provides, as relevant here:

> **(1)** At the request of a party, the judge or a circuit court commissioner shall order witnesses excluded so that they cannot hear the testimony of other witnesses. The judge or circuit court commissioner may also make the order of his or her own motion.
>
> **(2)** Subsection (1) does not authorize exclusion of any of the following:
>
> (a) A party who is a natural person.
>
> (b) An officer or employee of a party which is not a natural person designated as its representative by its attorney.
>
> (c) A person whose presence is shown by a party to be essential to the presentation of the party's cause.

¶ 56. Richard H. does not explain why it was error for the court to sequester Reynolds under this statutory authority, again, assuming without deciding that the County was a party. The County is not a natural person and Richard H. does not argue that Reynolds herself was a party. Richard H. does not provide evidence that

230

corporation counsel, who represented the County in other proceedings related to Richard H.'s case, designated Reynolds as the County's representative. And, although Richard H. asserts that "the [County]'s participation as a party [was] essential," he fails to point to evidence that he explained to the circuit court, and fails to explain now with citation to the record and legal authority, why *the presence of Reynolds* during the entirety of the hearing was essential to the presentation of his case.

¶ 57. A second, and related, problem with Richard H.'s argument is that he fails to explain how the circuit court's decision to sequester Reynolds prejudiced him in a manner that requires reversal. Pursuant to WIS. STAT. § 805.18(2), a procedural error does not warrant reversal unless, based on an examination of the entire record, the error "affected the substantial rights of the party seeking to reverse or set aside the judgment." Richard H. states that "[b]y denying the [County its] rightful status as a party, the trial court prejudiced" him. Richard H. further explains that by sequestering Reynolds, "the court could not fully benefit from the knowledge and experience of the [County] who provided services and oversight through the case worker to the parent, child and foster care provider, from beginning to end." This argument fails to come to terms with the fact that Reynolds gave extensive testimony during the hearing. And, Richard H. does not explain how the court would have further benefitted from Reynolds' knowledge had she been allowed to remain in the courtroom throughout the proceedings.

¶ 58. For these reasons, we reject Richard H.'s argument that the circuit court erred in granting the motion to sequester witnesses, including Reynolds.

*D. In the Interest of Justice*

■

¶ 59. Richard H. argues that we should "grant a new trial in the interests of justice" pursuant to WIS. STAT. § 752.35, "because there exist several significant legal issues that were never tried to the court." Richard H. does not elaborate on what these legal issues are, nor does he explain why they merit granting a new trial. We reject this argument as undeveloped.

## CONCLUSION

¶ 60. For the forgoing reasons, we affirm the circuit court's decision on postdisposition motion to deny the petition for change of placement, to dismiss the foster parents' Chapter 54 guardianship petition, and to leave in place the Chapter 48 guardianship petition.

*By the Court.*—Orders affirmed.