COURT OF APPEALS
DECISION
DATED AND FILED

December 16, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2024AP2454**
**2024AP2455**
**2024AP2456**
**STATE OF WISCONSIN**

Cir. Ct. Nos. **2022JC57**
**2022JC58**
**2022JC59**

**IN COURT OF APPEALS**
**DISTRICT I**

APPEAL NO. 2024AP2454

IN THE INTEREST OF R.B., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

A.B., JR.,

RESPONDENT-APPELLANT.

APPEAL NO. 2024AP2455

IN THE INTEREST OF R.B., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

A.B., JR.,

      RESPONDENT-APPELLANT.

APPEAL NO. 2024AP2456

IN THE INTEREST OF R.B., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

A.B., JR.,

      RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Milwaukee County: JANE VINOPAL CARROLL, Judge. *Affirmed*.

¶1     COLÓN, P.J.[1]   Adam appeals from circuit court orders changing the placement of his three children—Anne, Betty, and Clair—in connection with CHIPS[2] dispositional orders.[3]   Adam argues that the circuit court erroneously exercised its discretion when it changed the placement of the children from with March, Adam's sister, to with Emily, the children's maternal aunt, because there was insufficient evidence to support the circuit court's decision and that the court applied the wrong legal standard.  Upon review, this court affirms.

## BACKGROUND

¶2     On January 3, 2022, Adam and Kira were involved in a physical altercation that resulted in Adam's arrest on domestic violence related charges. Later that same month, the Division of Milwaukee Child Protective Services ("DMCPS") removed Adam's and Kira's children—Anne, Betty, and Clair—from their care and placed them with Adam's sister, March.[4]  DMCPS then petitioned for protection or services for the children due to its concerns of child neglect based on allegations of the parents' substance abuse and domestic violence.  The circuit court found the children in need of protection or services, and, in CHIPS dispositional orders for each child, set forth conditions for Adam and Kira to

---

[1]  These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version.

[2]  CHIPS is an acronym used "to denote the phrase 'child in need of protection or services' as used in the Wisconsin Children's Code, [WIS. STAT. ch. 48]." *Marinette Cnty. v. Tammy C.*, 219 Wis. 2d 206, 208 n.1, 579 N.W.2d 635 (1998).

[3]  We refer to the family members involved in this confidential matter using pseudonyms. *See* WIS. STAT. RULE 809.19(1)(g).

[4]  Anne had already been living with March for about one year pursuant to a family arranged plan.

3

complete and services to engage in before the children could be returned to their care.

¶3 The circuit court approved a permanency goal of reunification with the parents and a concurrent goal of placing the children with a guardian if reunification was not possible. Since the time that the children were removed from Adam's and Kira's care, Kira has made some progress towards reunification: she obtained her own apartment, attended weekly therapy, and started to maintain her sobriety. Adam has been intermittently incarcerated since October 2023. He has maintained contact with the children, but has not engaged in any of the services referred by DMCPS.

¶4 On April, 18, 2024, DMCPS filed a notice of change in placement with the circuit court to change the children's placement from with March to Kira's sister, Emily. DMCPS cited the strained relationship between March and Kira as the reason for the change. Adam and March contested the change of placement, and on July 1, 2024, the circuit court held a hearing on the issue. At the time of the hearing, Anne was about ten years old, Betty was about five years old, and Clair was about four years old. The children had been formally placed in March's care for about two-and-a-half years.

¶5 At the change of placement hearing, the circuit court heard testimony from the ongoing case supervisor and Emily.[5] The case supervisor testified that Kira's and March's relationship was "very strained." He explained

---

[5] Although March did not testify, the court allowed her to provide a statement prior to closing arguments in which she explained that she wanted what was best for the children, always put the children's needs first, and that a change of placement would disrupt their lives.

that DMCPS was concerned because March was limiting visitations with Kira which makes reunification more difficult. He was also aware of allegations that March blocked Kira's number so that Kira cannot contact her or talk to the children on a regular basis, and was preventing Anne from contacting Kira on Anne's personal phone.

¶6 The ongoing case supervisor further described how March was aligned with Adam against Kira based on his review of jail phone calls between Adam and March. He stated that March told the children that Kira is "the reason that they're not home" which is contrary to DMCPS's view that the children are placed outside the home in large part because Adam cannot control his emotions and engaged in domestic violence against Kira. Furthermore, the ongoing case supervisor testified that DMCPS was concerned that March was refusing to let DMCPS into her home to ensure that it was safe and appropriate for the children, and that March had delayed the children's participation in services like therapy.

¶7 Emily testified that she lives with her husband and her ten-year-old son and their home has the space to accommodate the addition of all three children. Emily also testified about her relationship with Kira and the children. She described her preexisting relationship with the kids including past visits with them, and how the children have been doing while staying with her for the past week and a half. Regarding Kira, Emily explained that approximately two-and-a-half years ago they were estranged due to Kira's substance abuse and personal disagreements between them; however, they had been working on their relationship and are on better terms now. Furthermore, Emily was willing to facilitate a relationship between the children and both sides of their family, including maintaining the children's relationship with March.

¶8 The circuit court ultimately decided that changing the children's placement to Emily was in their best interests. The court recognized that the children have a bond with March and she "provided good care to them[.]" However, the court found that March was "actively working [] against" the permanency goals contrary to the best interests of the children. The court focused on how March was intentionally excluding Kira from the children's lives and placing the children in the middle of the dispute between the parents, despite the case managers continually raising this as an issue with March at nearly every home visit. Thus, the court ordered the children's placement changed from March to Emily.

¶9 Adam appeals. Additional relevant facts will be set forth as necessary.

## DISCUSSION

¶10 On appeal, Adam argues that there was insufficient evidence to support changing the placement of the children, and that the circuit court applied the wrong legal standard. The State and the guardian *ad litem* for the children (the "GAL") disagree, and maintain that the court properly exercised its discretion when it found that placing the children with Emily was in the children's best interests. We agree with the State and the GAL.

¶11 It is within the circuit court's discretion to decide whether a change of placement is in the best interests of the child. ***Tina B. v. Richard H.***, 2014 WI App 123, ¶¶45-49, 359 Wis. 2d 204, 857 N.W.2d 432. "A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion

that a reasonable judge could reach." ***Dane Cnty. DHS v. Mable K.***, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198. "We will not reverse a discretionary determination by the [circuit] court if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision." ***Sukala v. Heritage Mut. Ins. Co.***, 2005 WI 83, ¶8, 282 Wis. 2d 46, 698 N.W.2d 610 (citation omitted). Furthermore, "[w]e will search the record for reasons to sustain the [circuit] court's exercise of discretion." ***Lofthus v. Lofthus***, 2004 WI App 65, ¶21, 270 Wis. 2d 515, 678 N.W.2d 393.

¶12 To support his argument that there was insufficient evidence, Adam highlights evidence that the he believes the circuit court did not consider because it strongly supports a different decision. First, he contends that the court did not sufficiently consider the children's bond with March and how changing their placement would harm them. We disagree. There was no dispute that the children have a bond with March and the court also recognized that the children are "bonded with [March]" when it rendered its decision. Furthermore, the court relied on Emily's testimony that she would help maintain the children's relationship with March if the placement was changed. It was reasonable for the court to consider the bond between March and the children, accept how Emily's willingness to maintain that relationship could lessen the potential harm from a change of placement, and to conclude that despite the risk of some harm, it is nonetheless in the best interests of the children to change the placement.

¶13 Similarly Adam argues that the circuit court erred by not considering the "great risk" that Emily would be an unstable placement because she may be unable to meet the demands of the children long term. However, Adam does not cite to evidence that supports that Emily would be unable to handle the needs of

7

the children and instead relies entirely on speculation. Although there is always some amount of inherent risk in changing a placement, the court was presented with ample evidence that Emily would be a stable placement. For example, the ongoing case supervisor testified that DMCPS investigated whether Emily would be an appropriate placement and concluded that Emily would be "safe and appropriate … for short-term and long-term options." Emily also confirmed at the hearing that she was able to address the children's needs and was willing to raise them long-term if necessary. The court did not err by relying on the evidence presented to it.

¶14     Next, Adam argues that the circuit court erred because Anne did not wish to move. We note that Anne's wishes were not explicitly raised at the hearing; however, Anne's GAL recommended the court grant the change of placement. *See* WIS. STAT. § 48.235(3)(a) (describing the GAL's role as the "advocate for the best interests of the person[.]"). Adam relies on a CASA[6] report submitted to the court which states that Anne told a CASA volunteer that she did not want to move. The wishes of the child is one of multiple factors for the circuit court to consider when deciding whether a change of placement is in the child's best interests. In light of the circuit court's ultimate reasoning that March was actively working against the permanency goals contrary to the best interests of the children we cannot say that the court erred simply because there was some evidence that could have supported a different decision.

---

[6] CASA is an acronym for the Kids Matter Court Appointed Special Advocate program. *See* WIS. STAT. § 48.236.

¶15    Adam also argues that the circuit court overlooked Adam's concern about the children's safety with Emily stemming from text messages between Emily's ten-year-old son and Anne. At the hearing the ongoing case supervisor testified that he had reviewed a copy of the text messages and was not concerned about them.[7]   Emily also testified that she had reviewed the text messages and described their content as "a whole bunch of emojis, probably about 26 of them or more" including a pizza, cheeseburger, milkshake, cookie, sun, watermelon, sunshine, and banana. Emily further stated that she had talked to her son about them and confirmed that she had no concerns about these messages. No evidence contradicting the case supervisor's and Emily's characterization of the text messages was presented at the hearing. Furthermore, no one argued that the text messages represented a safety concern at the hearing.

¶16    On appeal, Adam characterizes the text messages as "sexual innuendo" and suggests that the text messages are a critical fact that undermines the circuit court's decision. However, the only evidence in the record supporting Adam's argument is a CASA report that summarizes how Adam and his friend told a CASA volunteer that Anne and Emily's son were sending highly inappropriate text messages to each other. The nature of the text messages described by Adam and his friend to the CASA volunteer differs from the description presented at the hearing.

---

[7] We note that the text messages are not in the record on appeal. *See Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26, 496 N.W.2d 226 (Ct. App. 1993) ("We are bound by the record as it comes to us.").

¶17    The circuit court was not required to accept Adam's characterization of the text messages described in the CASA report over the contrary testimony of both the ongoing case supervisor and Emily. *See **Nicholas C.L. v. Julie R.L.**,* 2006 WI App 119, ¶23, 293 Wis. 2d 819, 719 N.W.2d 508 ("[T]he [circuit] court is the ultimate and final arbiter of the credibility of witnesses[.]").  Thus, the court's ultimate determination is consistent with the facts in the record and we will not disturb it. *See **id.***

¶18    Finally, Adam argues that the circuit court applied the wrong legal standard by prioritizing Kira's relationship with her children over the best interests of the children themselves.  We disagree.  The court was clear at the outset of its decision that the legal standard it was applying was "simply what is in the best interest of the children."  The court's reasoning focused on how March's actions were putting the children in the middle of the dispute between the parents and "create[s] a problem for DMCPS in planning for their safety and planning for their long-term permanency[.]"  Therefore, we conclude that the court properly exercised its discretion when it found that changing the children's placement was in their best interests. *See **Mable K.**,* 346 Wis. 2d 396, ¶39.

## CONCLUSION

¶19    For the foregoing reasons, we conclude that the circuit court properly exercised its discretion when it changed the children's placement.  The court's decision is supported by the facts in the record and the court applied the proper legal standard.  Accordingly, we affirm.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.