IN the MATTER OF the GUARDIANSHIP OF JENNIFER M.:

JENNIFER M.,
Petitioner-Appellant,

v.

Franz MAURER,
Guardian ad Litem and Dianne H.,
Respondents-Respondents.

Court of Appeals

*No. 2008AP1985. Submitted on briefs May 26, 2009.
—Decided December 22, 2009.*

2010 WI App 8

(Also reported in 779 N.W.2d 436.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Patricia M. Cavey* of Milwaukee.

On behalf of the respondent-respondent, Franz Maurer, the cause was submitted on the brief of *Franz J. Maurer* of Menasha.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. BRUNNER, J. Jennifer M. appeals from a non-final order[1] requiring her to meet with her guardian ad litem outside the presence of her counsel. The sole issue raised by this case is whether a circuit court has authority to order a represented adult ward to submit to an interview with her guardian ad litem, outside the presence of her counsel and over her attorney's objection, where the order also requires the guardian ad litem to report the content of the interview to the circuit court.[2] We reverse because the circuit court lacks this authority.

## BACKGROUND

¶ 2. Jennifer M. is an adult woman subject to a limited guardianship order entered in 1998. The circuit court appointed her father, James M., as guardian after determining Jennifer's developmental disabilities im-

[1] We granted Jennifer's petition for leave to appeal a non-final order on September 16, 2008.

[2] Jennifer also challenges a circuit court order finding her indigent for the limited purpose of waiver of appellate filing fees and transcript costs. The order also sets forth the procedure governing appointment of indigency counsel. Jennifer contends the order denies her constitutional right to counsel of her choosing under art. 1, § 21(2) of the Wisconsin Constitution. However, Jennifer's chosen counsel continues to represent her. Therefore, this issue is not ripe for review and we decline to address it. *See Streff v. Town of Delafield*, 190 Wis. 2d 348, 526 N.W.2d 822 (Ct. App. 1994).

paired her ability to make some decisions independently. Jennifer retained a number of rights, the most relevant to this appeal being her right to "make decisions as to relationships and visitation as with the ward's mother, [Dianne H]." In addition, the court appointed respondent Franz Maurer guardian ad litem. Jennifer retained her own adversary counsel in 1999 after Dianne filed a petition alleging Jennifer's father was interfering with her right to determine her relationship with her mother. Jennifer's parents are divorced.

¶ 3. Though Jennifer chronicles numerous petitions and court orders predating this appeal, the current dispute primarily arises from a series of motions and orders following Dianne's April 2006 petition to remove Jennifer's father as guardian.[3] The circuit court denied both Jennifer's motion to dismiss the petition and her request to deny Maurer reappointment as guardian ad litem.[4] The court also entered an order requiring Jennifer's mother and father to participate in mediation, later requiring Jennifer's participation in the mediation process.

¶ 4. Jennifer's opposition to mediation and Maurer's reappointment as guardian ad litem was well-documented by the circuit court. Following a show-

---

[3] The inference Jennifer seeks to create by this elaborate recitation is that her mother is a serial litigant who has engaged in "ten years of practically continuous [and] unsuccessful post-judgment petitions and motions for reconsideration . . . to remove the guardian." We do not consider the previous litigation particularly relevant to the narrow question of law presented by this appeal.

[4] In Jennifer's view, Attorney Maurer had taken "a position antithetical to Jennifer's well being" by "favoring future contact between Jennifer and her mother, contrary to the supposed wishes of Jennifer."

cause hearing, the court observed "any participation by [Jennifer] in the mediation process is opposed by [her attorney, Patricia Cavey, who] has also prevented the Guardian ad Litem, [Attorney Maurer], from having any direct contact with her client." However, the court lamented it "had no input from [Jennifer] regarding her personal desires." It found an interview and report from the guardian ad litem was "essential in determining those interests." Motivated by a desire to prevent undue stress to Jennifer by providing a "non-confrontational, non-threatening" forum in which it could receive "input from [Jennifer] regarding her own desires and wishes," the circuit court entered an order containing the command at issue in this appeal:

> [Jennifer M.] is ordered to meet with Attorney Franz Maurer, her Guardian ad Litem, one-on-one . . . within 21 days of this Order, to discuss [her] position regarding future contact with her maternal family. The Guardian ad Litem is ordered to report to the Court regarding the best interests of [Jennifer] regarding such future contact, as well as any participation by [Jennifer] in the mediation process initiated by the Guardian and [her] mother.

The circuit court denied Attorney Cavey's request for clarification whether she was allowed to attend the meeting between Jennifer and the guardian ad litem.

## DISCUSSION

■■

¶ 5. As an initial matter, we must clarify the standard of review. Maurer asserts we review for an erroneous exercise of discretion because the issue in this appeal is "just how the trial court interpreted the ward's right to counsel within the context of a particu-

lar and fact-intensive guardianship proceeding." We disagree. There is nothing particularly fact-intensive about the circuit court's authority to order a represented adult ward to meet with her guardian ad litem outside her counsel's presence. A ward's right to counsel is guaranteed by WIS. STAT. § 54.42(1)(a),[5] and as such the scope of that right is a question of statutory interpretation. *See E.H. v. Milwaukee County*, 151 Wis. 2d 725, 730, 445 N.W.2d 729 (Ct. App. 1989). "Construction of a statute is a question of law, which this court reviews without deference to the trial court's determination." *Id.*

¶ 6. Certain fundamental principles of statutory construction guide our analysis. If the language of a statute is unambiguous, we will ordinarily stop the inquiry and apply the statute in accordance with its plain meaning. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory language will be given its common, ordinary, and accepted meaning. *Id.* "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. "[T]he court is not at liberty to disregard the plain, clear words of the statute." *Id.* (citation omitted).

¶ 7. Under the guardianship statutes, WIS. STAT. ch. 54, an adult ward may be represented by both a guardian ad litem and an adversary attorney. An ap-

---

[5] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

pointed guardian ad litem is "an advocate for the best interests of the . . . ward." WIS. STAT. § 54.40(3). By statute, the guardian ad litem is vested with considerable discretion: "The guardian ad litem shall function independently, in the same manner as an attorney for a party to the action, and shall consider, but is not bound by, the wishes of the . . . ward or the positions of others as to the [ward's] best interests." *Id.* However, the guardian ad litem must perform certain duties, among them interviewing the ward and explaining the right to counsel. WIS. STAT. §§ 54.40(4)(a), (b).

¶ 8. The role of the guardian ad litem is not identical to that of the adversary attorney. A ward's adversary counsel "shall be an advocate for the *expressed wishes* of the . . . ward." WIS. STAT. § 54.42(1)(b) (emphasis added). "The best interests of a ward and the ward's wishes expressed while competent may overlap. Ultimately, however, 'best interests' is a standard that is not necessarily coextensive with what an individual has chosen or would choose were she competent to do so." *Knight v. Milwaukee County*, 2002 WI 27, ¶ 53, 251 Wis. 2d 10, 640 N.W.2d 773 (citations omitted). Two cases illustrate this distinction. In *E.H.*, this court concluded adversary counsel need not defer to the guardian ad litem's waiver of the ward's right to contest a CHIPS petition. *E.H.*, 151 Wis. 2d at 736–38. We reasoned that "the involvement of a [guardian ad litem] in these situations does not diminish the adversary counsel's duty to provide his client with zealous, competent and independent representation." *Id.* at 737. In addition, we have held that an attorney may be disqualified as guardian ad litem by the conflict of interest provisions of the Rules of Professional Conduct for Attorneys where the guardian ad litem formerly served

as an adversary attorney in a related proceeding. *Tamara L.P. v. County of Dane*, 177 Wis. 2d 770, 782–83, 503 N.W.2d 333 (Ct. App. 1993). In *Tamara L.P.*, we noted the "guardian ad litem's [duties] may require that she take a position directly opposed to the wishes of her former client." *Id.* at 783.

¶ 9. The Rules of Professional Conduct for Attorneys do not directly prohibit the interview in this case. Jennifer argues the no-contact rule embodied in SCR 20:4.2 protects the ward from *ex parte* interviews by an opposing attorney. The literal command of the rule does no such thing. Supreme Court Rule 20:4.2 generally prohibits a lawyer from communicating with another represented person in the same matter, but not if the lawyer is acting pursuant to a court order, as the guardian ad litem would in this case. The restrictions explicitly imposed by SCR 20:4.2 do not compel us to adopt the rule Jennifer seeks.

¶ 10. However, the scope of the ward's right to counsel is not necessarily coextensive with the explicit ethical obligations imposed by the Rules of Professional Conduct. A ward's statutory right to counsel is an important right "necessary to preserve the 'fairness and integrity' " of the guardianship proceedings. *See Oneida County DSS v. Nicole W.*, 2007 WI 30, ¶ 33, 299 Wis. 2d 637, 728 N.W.2d 652. No statutory provision limits the right to counsel to those circumstances where the Rules of Professional Conduct would be violated, and we may therefore look to sources other than the Rules to determine the scope of the right. Jennifer argues the evils prompting enactment of the no-contact rule merit extension of the right to counsel to meetings with the ward's guardian ad litem:

> The proscription against a lawyer communicating directly with an opposing party . . . is based on a variety of rationales. First, "[i]t prevents unprincipled attorneys from exploiting the disparity in legal skills between attorney and lay people. Thus, the rule prevents a lawyer from circumventing opposing counsel to obtain unwise statements from the adversary party. Second, [the no-contact rule] preserves the integrity of the attorney-client relationship. That is, counsel is precluded from driving a wedge between the opposing attorney and that attorney's client. Third, the rule helps prevent the inadvertent disclosure of privileged information. And, finally, it may facilitate settlement by channeling disputes through lawyers accustomed to the negotiation process.

*Polycast Tech. Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y. 1990) (citations omitted) (second alteration added).

¶ 11. The policies underlying the no-contact rule are of sufficient importance in guardianship cases that the right to counsel guaranteed by Wis. Stat. § 54.42(1)(b) includes the ward's right to have counsel present during an interview with the guardian ad litem for the purpose of making a report to the court. A ward placed under a guardianship of the person has been found incompetent in that "the individual is unable effectively to receive and evaluate information or to make or communicate decisions to such an extent that the individual is unable to meet the essential requirements for his or her physical health and safety." Wis. Stat. § 54.10(3)(a)2. This fact enhances the disparity in legal skill between the guardian ad litem and the ward. Additionally, the presence of adversary counsel during an interview with the ward's guardian ad litem prevents the guardian ad litem from manipulating the

distinction between the ward's best interests and his or her expressed interests, inquiries that may be fraught with tension. *See Knight*, 2002 WI 27, ¶¶ 53–54. Finally, to the extent such an interview may reveal information protected by the attorney-client relationship, the right to counsel helps prevent the inadvertent disclosure of privileged information.

¶ 12. We do not suggest Attorney Maurer has acted improperly in his role as guardian ad litem for Jennifer. Our limited review of the record has revealed no actual misconduct by the parties involved in this litigation, and we do not mean to imply a party has committed any. The question we are confronted with today is a narrow one of law. The guardian ad litem must interview the ward as part of his or her general duties. Wis. Stat. § 54.40(4)(a). We simply hold the interview must be conducted in the presence of a represented ward's adversary counsel.[6]

*By the Court.*—Order reversed and cause remanded.

---

[6] Given the zeal with which the attorneys in this proceeding have defended their clients' interests, we anticipate that, on remand, the parties will question the role of adversary counsel during a ward's interview with the guardian ad litem. Though in our view the rules governing the guardian ad litem interview are similar to those governing oral depositions in which evidence is taken subject to objection, *see* Wis. Stat. § 804.05(4)(b), oversight of the parties' conduct is a matter reserved to the circuit court's discretion.