#26168-a-JKK

**2013 S.D. 4**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
\* \* \* \*

IN THE MATTER OF THE
GUARDIANSHIP AND CONSERVATORSHIP
OF NICOLE TRINA STEVENSON
\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA
\* \* \* \*

THE HONORABLE STUART L. TIEDE
Judge
\* \* \* \*

MARTY J. JACKLEY
Attorney General

DANIEL J. TODD
Special Assistant Attorney General
Pierre, South Dakota

Attorneys for appellee Guardian
South Dakota Department of
Social Services.

JOHN A. HAMILTON
South Dakota Advocacy Services, Inc.
Sioux Falls, South Dakota

Attorneys for appellee protected
person Nicole Trina Stevenson.

RICHARD L. JOHNSON
Sioux Falls, South Dakota

Attorney for appellant Mother
Dolores G. Overholtzer.

THOMAS M. KELLER
Sioux Falls, South Dakota

Attorney for appellee Father
Wayne Stevenson.

\* \* \* \*

CONSIDERED ON BRIEFS
ON NOVEMBER 6, 2012

OPINION FILED **01/09/13**

#26168

KONENKAMP, Justice

[¶1.] The circuit court ordered a mother's removal as guardian and conservator for her disabled adult daughter, after the mother failed to address adequately her daughter's obesity and transition to more independent living. The mother appeals.

## Background

[¶2.] Nicole Trina Stevenson was born in 1985 with cerebral palsy and developmental disabilities. Dolores Overholtzer and Wayne Stevenson are Nicole's biological parents. They were married at the time Nicole was born, but divorced in 1995. After Nicole turned 18, a California court appointed Dolores as Nicole's guardian and conservator. In 2006, Wayne and Dolores stipulated that Dolores and Nicole could move to South Dakota with Dolores's new husband, Harry Overholtzer.

[¶3.] In August 2007, Dolores petitioned for guardianship and conservatorship in South Dakota. Wayne objected, contesting jurisdiction and requesting appointment as Nicole's guardian or co-guardian. Wayne also sought appointment of an attorney for Nicole. After a hearing, the court appointed William H. Golden to represent Nicole, and deferred ruling on the petition for guardianship. Golden was directed to conduct an investigation and make a recommendation to the court. He issued a letter report, dated October 29, 2008. In November 2008, Dolores was appointed Nicole's guardian and conservator. Wayne was granted visitation to be exercised through South Dakota Achieve.

[¶4.] Dolores and Wayne were unable to cooperate on visitation. Wayne felt Dolores deliberately frustrated his scheduled visits. Dolores insisted that Nicole

was capable of making her own decisions and that Nicole did not want to visit with her father. Wayne claimed Dolores was not acting in Nicole's best interests because she allowed Nicole to gain an immense amount of weight over the years. Nicole weighed over 300 pounds. Dolores believed Nicole's weight gain was a result of medication, inability to exercise, and genetics.

[¶5.] In January 2010, Golden was permitted to withdraw as Nicole's attorney because he had obtained new employment. No new attorney was appointed. In April, Wayne petitioned for (1) removal of Dolores as Nicole's guardian, (2) appointment of the South Dakota Guardianship Project or another independent party as Nicole's guardian, (3) determination of conservatorship, and (4) appointment of an attorney for Nicole.

[¶6.] At a hearing in June 2010, Wayne called Golden to testify. His October 2008 report was admitted into evidence. Golden informed the court through his report and testimony that Nicole was highly dependent on Dolores and that transition to an independent living facility would be in Nicole's best interests. He cited the fact that when the parties lived in California, they agreed that it would be in Nicole's best interests to transfer to an independent living situation. Golden also reported that Dolores had influence over Nicole's contact with Wayne, which caused Nicole great anxiety, although Golden did not believe Dolores was "overtly attempting to prevent Nicole from visiting with her father[.]" Golden recommended that (1) an outside guardian be appointed for Nicole; (2) Dolores should act as conservator; and (3) visitation be allowed between Wayne and Nicole, but it should

not be "forced." Visitation had "caused undue anxiety for Nicole and [had] been counterproductive in her relationship with her father."

[¶7.]     At the conclusion of the hearing, the court issued an oral ruling. It recognized that "some questions have been raised with respect to this issue of independent living and the pace that [Dolores] is taking in preparing Nicole for that kind of adjustment . . . [and] with respect to the issue of visitation by the father." But the court decided not to order removal of the guardian at that time. Rather, it gave Dolores more time to work toward transferring Nicole to independent living.

[¶8.]     In November 2010, Dolores petitioned the court to appoint an attorney to represent Nicole. Relying on SDCL 29A-5-309, Dolores asserted that Nicole desired an attorney to represent her and that it would be in her best interests if an attorney represented her, because her interests may be different from those of her parents in regard to guardianship and visitation. Wayne again sought to end Dolores's role as guardian and conservator. He alleged that Dolores failed to act in Nicole's best interests by allowing her weight to reach in excess of 300 pounds and failing to move her into independent housing. Wayne also asked for an attorney for Nicole.

[¶9.]     At the November 2010 hearing, the court appointed attorneys Elizabeth Overmoe and John Hamilton of South Dakota Advocacy Services to represent Nicole. The court deferred the issue of terminating Dolores's role as guardian to allow Hamilton and Overmoe time to review the record and consult with Nicole and prepare a report for the court with their recommendations.

[¶10.]    After Overmoe and Hamilton submitted their investigative report, a hearing was held in June 2011. Several witnesses testified. Overmoe and Hamilton questioned the witnesses and gave closing arguments. Their report, although previously given to the parties and the court, was not admitted into evidence. At the conclusion of the hearing, counsel for Dolores asked to cross-examine Hamilton about certain statements made in the investigative report. Counsel argued that Hamilton and Overmoe acted "in the role of an expert" when they prepared their report for the court. The court refused to allow them to testify. It concluded that Overmoe and Hamilton provided their report "in their role as advocate[s] for their client[.]" Noting that the document was not under oath, the court remarked that "[i]t may be little or no different than if they stood up and said what's in the best interests of their client in lieu of oral argument."

[¶11.]    In September 2011, the court issued findings of fact, conclusions of law, and an order terminating Dolores's appointment as guardian and conservator. Dolores appeals, asserting the court abused its discretion in removing her and barring her attorney from cross-examining Hamilton and Overmoe about their investigative report.

### Analysis and Decision

[¶12.]    Dolores argues that the investigative report was in the nature of an expert report because it contained facts and statements from other parties. By preventing her from questioning Hamilton and Overmoe, the court, she contends, denied her due process of law. Wayne responds that the report was never received into evidence and was considered by the court to be equivalent to an argument by

counsel on behalf of Nicole. Moreover, Wayne argues that the court did not rely on the investigative report when terminating Dolores's role as guardian. From Wayne's point of view, the information in the report as "clearly cumulative and harmless[.]"

[¶13.] Attorneys Overmoe and Hamilton similarly argue that the information in the report was much the same as the other evidence offered at the hearing. They contend that any error in receiving the report was harmless, and if Dolores "wanted to have 'authority' to cross-examine, she should have requested that South Dakota Advocacy Services be appointed in some other capacity, such as guardian ad litem, court representative, etc."

[¶14.] South Dakota courts have authority to "appoint an attorney for the person alleged to need protection, either upon the filing of the petition or at any time thereafter, if requested by the person alleged to need protection, if the person expresses a desire to contest the petition, or if the court determines that an appointment is otherwise needed to protect the person's interests." SDCL 29A-5-309. Alternatively, if the protected person is not represented by an attorney, "the court shall either appoint a court representative to make an investigation and recommendation concerning the relief requested in the petition, or shall order the person alleged to need protection to attend the hearing on the petition." *Id.* A "court representative" has the duty to "make a recommendation to the court concerning the relief requested in the petition and shall submit a written report unless the court otherwise orders." SDCL 29A-5-310.

[¶15.]     Here, the court appointed Hamilton and Overmoe to represent Nicole. It did not appoint them to be court representatives. Yet the court ordered them to "conduct such investigation as they deem necessary in order to provide the court with recommendations as to the best interests of Nicole Trina Stevenson." Additionally, the court directed the attorneys for Wayne and Dolores to make available all relevant records in possession of the parties related to Nicole's visitation and independent living issues and ordered Wayne and Dolores to provide all necessary consents and waivers for Nicole's attorneys to speak with relevant persons and agencies regarding Nicole. Yet no parties were to "initiate contact with staff members at South Dakota Advocacy Services without their respective attorney present[.]"

[¶16.]     Many courts have grappled with defining the role of appointed advocates in cases involving protected persons. *See In re M.R.*, 638 A.2d 1274, 1285 (N.J. 1994); *see also Gross v. Rell*, 40 A.3d 240, 260 (Conn. 2012); *In re Guardianship of Griesinger*, 804 N.W.2d 527, 529-30 (Iowa Ct. App. 2011); *In re Lee*, 754 A.2d 426, 438-39 (Md. Ct. App. 2000); *In re C.W.*, 414 N.W.2d 277, 279 (Neb. 1987); *In re Guardianship of Jennifer M.*, 779 N.W.2d 436, 439 (Wis. Ct. App. 2009) (statutes identify the different roles of appointed advocates). Traditionally, an attorney is appointed to zealously advocate for a protected person's wishes, regardless of whether those wishes are in that person's best interests. A court representative (or guardian ad litem), on the other hand, is appointed to act in a protected person's best interests.

[¶17.] In cases where the role of the appointed advocate is unclear, the result can be advocacy of the protected person's wishes "diluted by excessive concern for the client's best interests[.]" *M.R.*, 638 A.2d at 1285. More problematic, however, are certain procedural and evidentiary dilemmas when an appointed attorney takes on the role of a court representative. Although there may be some overlapping of responsibilities, in many cases, the two roles might require different positions. Also, a court representative can communicate directly with all the parties, whereas an attorney usually communicates with the client and other counsel.

[¶18.] In this case, the role of the attorneys was not clear. When attorney Golden was appointed to represent Nicole, he submitted a report to the court with his recommendations. He also testified and was subject to cross examination. Attorneys Hamilton and Overmoe similarly were appointed to represent Nicole and submitted a report to the court with their recommendations. But, in contrast to Golden, they were not allowed to testify.

[¶19.] Because of the potential procedural and evidentiary problems, a court should be clear what role it intends the appointed advocate to assume, keeping in mind that the attorney's role is not to determine the protected person's best interests, but, after advice and assistance, to advocate a decision that the client desires. Indeed, the role of an attorney for a protected person should be no different than that of an attorney representing any other client, "as far as reasonably possible." *See* S.D. Rules of Professional Conduct, App. ch. 16-8, Rule 1.14. If, on the other hand, the court wishes to have an investigative report submitted on the

best interests of the protected person, a court representative is the proper appointment.

[¶20.] Nonetheless, certain distinguishing features in this case support the court's decision. The court made clear when it appointed Hamilton and Overmoe that no communications were to occur with the parties without the presence of opposing counsel. Moreover, although directed to issue a report to the court, that report was not entered into evidence at the hearing. Rather, it was considered by the court to be argument of counsel advocating for Nicole. Finally, there is no indication that the court relied on the report when it entered its findings of fact and conclusions of law. Therefore, while it was confusing for the court to direct Overmoe and Hamilton to prepare a report and make "such recommendations to the court as they deem necessary and advisable in the best interests of Nicole," that statement alone did not convert Hamilton and Overmoe into court representatives. And even assuming error in disallowing cross examination, the material they presented in their report and recommendation was cumulative of the material already in the record and presented in court.

[¶21.] Dolores next argues that the court abused its discretion when it removed her as Nicole's guardian and conservator. She believes the court erred when it blamed her for Nicole's weight problem. She directs us to the letter from Dr. Dierks in which he opined that Nicole's weight is "multifactorial," caused by her cerebral palsy, limited physical activity, and medications. She further faults the court for concluding that she failed to act in Nicole's best interests, because the record "is replete" with evidence otherwise. Finally, Dolores argues that the court

erred when it concluded that she frustrated Wayne's visitation with Nicole, "because the evidence established that Wayne Stevenson was getting all of the visitation he wanted with Nicole, and that Nicole had a good relationship with Wayne."

[¶22.]    Based on our review of the evidence, we conclude that the court did not abuse its discretion in removing Dolores as Nicole's guardian and conservator. Everyone agreed in 2004 that moving Nicole into an independent residential living situation would be in her best interests. By 2011, Dolores had not made significant progress toward that goal. Moreover, although Dolores did not overtly discourage Nicole's relationship with Wayne, she did not dispute that her attitude toward Wayne affected Nicole and caused Nicole anxiety about her relationship with her father. On the issue of Nicole's weight, even accepting Dolores's reasons for Nicole's weight gain — medication, genetics, etc. — Dolores did not dispute that she had failed to promptly and aggressively manage the issue. One cannot doubt Dolores's sincerity when her attorney writes, "Every day of Dolores's life was dedicated to fostering Nicole's quality of life." Still, Nicole's long-term needs had to be addressed.

[¶23.]    Dolores's request for appellate attorney's fees is denied.

[¶24.]    Affirmed.

[¶25.]    GILBERTSON, Chief Justice, and ZINTER and WILBUR, Justices, concur.

[¶26.]    SEVERSON, Justice, deeming himself disqualified did not participate.