**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**November 22, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No.    2023AP757** | Cir. Ct. No.  2000GN206 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** **DISTRICT II** |

IN THE MATTER OF THE GUARDIANSHIP AND PROTECTIVE PLACEMENT OF B.L.M.:

RACINE COUNTY,

    PETITIONER-RESPONDENT,

  V.

B.L.M.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Racine County: WYNNE P. LAUFENBERG, Judge. *Affirmed.*

¶1 LAZAR, J.[1] Bonnie[2] appeals from the 2021 order continuing her protective placement. She raises (for the first time) the question of whether the circuit court lost competency to proceed with the review of her protective placement under WIS. STAT. ch. 55 when it failed to appoint (or reappoint) a guardian ad litem under § 55.18 after Racine County filed an annual report in 2021. She further contends that this was a violation of a statutory time limit, and as such, her challenge was not waived when she did not raise it before the circuit court. The County notes that a guardian ad litem was appointed in 2019 and never discharged until 2022, when a new guardian ad litem was appointed. It argues that the circuit court retained competency over Bonnie's protective placement proceedings because the court was not required to *reappoint* a guardian ad litem each year and that Bonnie either waived her right to challenge competency on appeal or that any errors below in that regard were harmless.

¶2 After a careful review of statutory provisions and relevant case law, this court concludes that the circuit court was not required to reappoint a guardian ad litem each year. The circuit court retained competency, and there is no potential violation of a statutorily mandated time limit. Thus, Bonnie's challenge could be—and was—waived when it was not raised in the circuit court. Accordingly, this court affirms the order of the circuit court.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] This court refers to the subject individual by a pseudonym pursuant to WIS. STAT. RULE 809.19(1)(g), to protect her confidentiality.

**BACKGROUND**

¶3      As far back as 2000, the County first filed a petition for guardianship for Bonnie when she was found unresponsive and ataxic.[3]  She was diagnosed with alcohol dementia[4] and significant memory impairment and found to be unable to live independently.  Since at least 2005, Bonnie has also been placed in protective placement in Racine County (most often in a locked facility).

¶4      Every year before this appeal, the County filed petitions and annual reports seeking to maintain Bonnie's protective placement and the guardians ad litem filed responsive reports.  The Record shows that the first guardian ad litem (GAL) Report, by Attorney Francis J. Endejan, was filed in June 2006.[5]  Attorney

---

[3] The Merriam-Webster Dictionary defines "ataxia" as "an inability to coordinate voluntary muscular movements that is symptomatic of some central nervous system disorders and injuries and not due to muscle weakness."  *Ataxia*, MERRIAM-WEBSTER DICTIONARY, https://merriam-webster.com/dictionary/ataxia (last visited Nov. 8, 2023).

[4] Bonnie was further diagnosed with Wernicke's encephalopathy as well as Korsakoff's syndrome.  Wernicke's encephalopathy is "an acute inflammatory hemorrhagic encephalopathy that is caused by thiamine deficiency (such as that associated with chronic alcoholism or malnutrition) and is characterized by loss of muscle coordination, visual disturbances (such as abnormal eye movement and diplopia), and confusion and memory loss."  *Wernicke's encephalopathy*, MERRIAM-WEBSTER MEDICAL DICTIONARY, https://merriam-webster.com/medical/Wernicke%27s%20encephalopathy (last visited Nov. 8, 2023).  That affliction can lead to Korsakoff's syndrome, which is "a chronic memory disorder that is caused by brain damage related to a severe deficiency of thiamine (as that associated with alcoholism or malnutrition) and is characterized by impaired ability to form new memories and by memory loss for which the patient often attempts to compensate through confabulation."  *Korsakoff syndrome*, MERRIAM-WEBSTER MEDICAL DICTIONARY, https://merriam-webster.com/medical/Korsakoff%20syndrome (last visited Nov. 8, 2023).

[5] The order appointing that guardian ad litem is not in the Record.

Endejan filed a second GAL Report in May 2007.[6]  On March 13, 2008, Attorney Endejan was discharged as guardian ad litem by court order.  On April 30, 2008, the probate court commissioner appointed Attorney Walter Joseph Kryshak as Bonnie's new guardian ad litem.  No County petition had been filed nor were there any pending hearings at that time.  On September 8, 2008, Attorney Kryshak filed his first GAL Report[7] following the County's August 15, 2008 petition for annual review of protective placement.

¶5      On April 21, 2009, a new guardian ad litem (James W. Pruitt) was appointed.[8]  On August 4, 2009, the County filed its petition for annual review, and Attorney Pruitt filed his GAL Report[9] on September 8, 2009.  For the next nine years, Attorney Pruitt filed GAL Reports following each petition for annual review by the County.[10]  All GAL Reports were on the same state forms with the

---

[6] The May 2007 report filed by Attorney Endejan was submitted on the State of Wisconsin's fillable Form GN-4110 entitled "Report and Recommendation of Guardian ad Litem (Annual Review of Protective Placement)" pursuant to WIS. STAT. § 55.18(2).  The form states that it cannot be modified and it begins with the preliminary phrase that the "report is being filed within 30 days of [the GAL's] appointment."  Obviously, that statement was not correct.

[7] This GAL Report was also on Form GN-4110 and contained the certification that it was being filed within 30 days of the GAL's appointment.  Again, that statement is not accurate.

[8] There is no order in the Record indicating that Attorney Kryshak's guardian ad litem appointment was terminated.

[9] This Report, too, was filed on Form GN-4110 and contained the same certification.

[10] After the August 13, 2010 petition, a GAL Report by Attorney Pruitt was filed on September 14, 2010.  Petitions and GAL Reports, respectively, were then filed as follows: August 15, 2011, and September 13, 2011; August 9, 2012, and August 31, 2012; August 8, 2013, and September 13, 2013; August 7, 2014, and September 9, 2014; August 6, 2015, and September 2, 2015; August 15, 2016, and September 13, 2016; August 17, 2017, and September 12, 2017; and July 26, 2018, and September 11, 2018.

4

same certification.[11]  Only one time during those ten years was Attorney Pruitt appointed *again* as Bonnie's guardian ad litem.

¶6  Attorney Noah Wishau was appointed[12] guardian ad litem on June 12, 2019.  From 2019 through 2022 (when a new[13] guardian ad litem was appointed), Attorney Wishau filed three GAL Reports following petitions for review by the County, all but one within thirty days from the petition filing date.  (The petition dates and GAL Report dates are as follows:  August 27, 2019, and September 16, 2019; September 18, 2020, and October 19, 2020; and August 19, 2021, and October 18, 2021.)

¶7  All of Bonnie's guardians ad litem used the same form for their GAL Reports:  Wisconsin State Form GN-4110.  While the form was revised four times over the course of Bonnie's guardianship and protective placement, it consistently contained the boilerplate certification that the report was being filed within thirty days after appointment of a guardian ad litem.  In almost every filing since 2006, that certification was inaccurate in Bonnie's case.  There is no way to modify or remove that line from the form.

---

[11] A different GAL Report (for guardianship due to incompetency), Wisconsin Form GN-3160, was also filed by Attorney Pruitt on October 7, 2011 in response to a request to change Bonnie's guardian.  That form did not include the thirty-day certification.

[12] Without explanation in the Record, another attorney was appointed guardian ad litem on January 24, 2019, but that attorney never filed a report and Attorney Wishau was appointed six months later.  No County reports were on file and no hearings were pending when either guardian ad litem appointment was made.

[13] Attorney Megan McGee Norris was appointed on July 27, 2022, and, following a petition by the County on August 11, 2022, she filed a GAL Report on September 6, 2022.

¶8      Bonnie's appeal looks back only to 2019 when Attorney Wishau was appointed as her fifth guardian ad litem. She asserts that, because his appointment was not made again in 2020 (after the County filed its September 2020 petition for review and continuation of Bonnie's protective placement) or in 2021 (after the County's August 2021 petition) the circuit court lost competency to hold the review hearing following Attorney Wishau's October 18, 2021 GAL Report. The circuit court did hold a due process hearing on December 20, 2021, and ordered a continuation of Bonnie's protective placement that same date.

¶9      The court also ordered continuation of protective placement on October 28, 2022. Bonnie appealed on May 2, 2023, challenging the December 2021 circuit court order. Bonnie's competency challenge is first raised before this court.

## STANDARD OF REVIEW

¶10     This court reviews independently the question of law whether a circuit court has lost competency. *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶7, 273 Wis. 2d 76, 681 N.W.2d 190. "Whether an objection to the competency of the circuit court can be waived is also a question of law that [this court] review[s] de novo." *Id.* Likewise, questions involving statutory interpretation are questions of law that this court reviews de novo. *Fond du Lac County v. Helen E.F.*, 2012 WI 50, ¶10, 340 Wis. 2d 500, 814 N.W.2d 179; *Reyes v. Greatway Ins. Co.*, 227 Wis. 2d 357, 364-65, 597 N.W.2d 687 (1999); *see also State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶¶44-51, 271 Wis. 2d 633, 681 N.W.2d 110. "Finally, when engaging in statutory interpretation, [this court is] assisted by prior decisions that have examined the

relevant statutes." *State v. Soto*, 2012 WI 93, ¶20, 343 Wis. 2d 43, 817 N.W.2d 848.

¶11 To the extent that there are any circuit court findings of fact that are on appeal, they are not to be overturned unless they are "clearly erroneous." *Walworth County v. Therese B.*, 2003 WI App 223, ¶21, 267 Wis. 2d 310, 671 N.W.2d 377 (quoting *Coston v. Joseph P.*, 222 Wis. 2d 1, 22, 586 N.W.2d 52 (Ct. App. 1998)). A circuit court's "factual findings will be upheld as long as they are supported by any credible evidence or reasonable inferences that can be drawn therefrom." *Insurance Co. of N. Am. v. DEC Int'l, Inc.*, 220 Wis. 2d 840, 845, 586 N.W.2d 691 (Ct. App. 1998) (quoting *Schreiber v. Physicians Ins. Co. of Wis.*, 217 Wis. 2d 94, 102, 579 N.W.2d 730 (Ct. App. 1998), *aff'd*, 223 Wis. 2d 417, 588 N.W.2d 26 (1999)).

## DISCUSSION

¶12 The legislature took care to enact a statutory provision to provide a protective placement system for certain vulnerable citizens that was "designed to encourage independent living and to avoid protective placement whenever possible." *County of Dunn v. Goldie H.*, 2001 WI 102, ¶29, 245 Wis. 2d 538, 629 N.W.2d 189 (quoting WIS. STAT. § 55.02). The purpose of WIS. STAT. ch. 55 is spelled out in § 55.001:

> The legislature recognizes that many citizens of the state, because of serious and persistent mental illness, … developmental disabilities, or other like incapacities, are in need of protective services or protective placement. [These services] should, to the maximum degree of feasibility … allow the individual the same rights as other citizens, and … protect the individual from financial exploitation, abuse, neglect, and self-neglect. This chapter is designed to establish those protective services and protective placements, to assure their availability to all individuals when in need of them, and to place the least possible

> restriction on personal liberty and exercise of constitutional rights consistent with due process and protection from abuse, financial exploitation, neglect, and self-neglect.

¶13 Our supreme court, concerned that protective placements under WIS. STAT. ch. 55 were "indefinite in duration and thereby [were] tantamount to a life sentence to a nursing home or other custodial setting," held that the former statutory provisions violated equal protection because there were "no periodic, automatic reexaminations of the need for continued placement." *State ex rel. Watts v. Combined Cmty. Servs. Bd.*, 122 Wis. 2d 65, 76-77, 362 N.W.2d 104 (1985). Accordingly, "[t]he *Watts* court established rules for extending Chapter 55 protective placements." *Goldie H.*, 245 Wis. 2d 538, ¶25.

> It required an annual review by a judicial officer and the appointment of a guardian ad litem, who is to meet with the protectively placed person, review the protective service agency's report, and after consultation with the protectively placed individual, report to the court with recommendations regarding the need for protective placement.

*Id.*

¶14 This appeal asks this court to examine part of that annual judicial review procedure and challenges the competency of the circuit court due to the fact that a guardian ad litem was not reappointed every year for Bonnie.

### I. The circuit court did not lose competency.

¶15 "The circuit court's competency refers to its 'ability to exercise the subject matter jurisdiction vested in it' by Article VII, Section 8 of the Wisconsin Constitution." *State v. Green*, 2021 WI App 18, ¶64, 396 Wis. 2d 658, 957 N.W.2d 583 (quoting *Mikrut*, 273 Wis. 2d 76, ¶¶8-10). A circuit court's competency is implicated "when the failure to abide by a statutory mandate is 'central to the statutory scheme.'" *Mikrut*, 273 Wis. 2d 76, ¶10 (citation omitted).

## A. The statute does not require annual reappointments of guardians ad litem.

¶16 The statute in question does *not* reference the duration or termination of a guardian ad litem. WISCONSIN STAT. § 55.18(2) states only that "[a]fter a county department has filed a report with the court under sub. (1)(a)1., the court shall appoint a guardian ad litem in accordance with s. 757.48(1)." The referenced statutory provision, WIS. STAT. § 757.48(1), likewise does not list the duration of a guardian ad litem's service, nor does it state when the appointment should be terminated. It merely speaks to the necessary qualifications of a guardian ad litem.

¶17 "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Kalal*, 271 Wis. 2d 633, ¶46. It necessarily follows that the court may not add language to a statute. This canon of construction was nicely summarized by our supreme court in *State v Neill*, 2020 WI 15, ¶¶22-23, 390 Wis. 2d 248, 938 N.W.2d 521, as follows:

> We also attempt "to give reasonable effect to every word, in order to avoid surplusage," [*Kalal*, 271 Wis. 2d 633, ¶46], and apply the fundamental canon of statutory construction that "[n]othing is to be added to what the text states or reasonably implies[.]" *Id.*; Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012). "A matter not covered is to be treated as not covered." *Lopez-Quintero v. Dittmann*, 2019 WI 58, ¶18, 387 Wis. 2d 50, 928 N.W.2d 480 (quoting Scalia & Garner, *Reading Law* 93).
>
> "One of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning." *Fond du Lac Cty. v. Town of Rosendale*, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989) (citation omitted); *see also Dawson v. Town of Jackson*, 2011 WI 77, ¶42, 336 Wis. 2d 318, 801 N.W.2d 316 ("We decline to read into the statute words the legislature did not see fit to write." (citation omitted)); *State v. Wiedmeyer*,

2016 WI App 46, ¶13, 370 Wis. 2d 187, 881 N.W.2d 805 ("It is not up to the courts to rewrite the plain words of statutes[.]"). "[R]ather, we interpret the words the legislature actually enacted into law." *State v. Fitzgerald*, 2019 WI 69, ¶30, 387 Wis. 2d 384, 929 N.W.2d 165.

*Id.* (alterations in original).

¶18 Bonnie appears to be asking this court to add words into the relevant statute. She argues that it is not just that a circuit court "shall" appoint a guardian ad litem *after* an annual report is filed, but that the appointment must be made *immediately* after such a filing. And, she asserts that the appointment somehow expires right after a hearing is held so that it must be made immediately after *each* filing. None of those words are included in the statute. It is not this court's "function to add language or exceptions to a statute because the statute, as written, may seem unwise." *A. & A.P. v. Racine County*, 119 Wis. 2d 349, 355, 349 N.W.2d 743 (Ct. App. 1984). In this case, it cannot even be said that the statute as written is unwise. Bonnie is correct that the County's filing of a report "triggers" the appointment of a guardian ad litem, but she is incorrect that the statute demands that a guardian ad litem appointment is terminated after a hearing or that reappointments are required annually. Her position, aside from being contrary to the plain language of the statute, is frankly absurd and unreasonable for several reasons.

¶19 First, the legislature has clearly sought to protect the rights and interests of individuals deemed to need guardianships and protective placements. *See* WIS. STAT. § 55.001. That explains why guardians ad litem are to be appointed for these vulnerable individuals. *Watts*, 122 Wis. 2d at 84-85. Such guardians ad litem are to speak with and garner the wishes of their wards; they are to understand what is in the best interest of their wards. *See Goldie H.*, 245 Wis. 2d 538, ¶25.

¶20    This leads to the second reason:  a guardian ad litem who has had the opportunity to speak with and observe the ward over more than just a month or two provides better assistance to the circuit court and support to the ward.  *See Helen E.F.*, 340 Wis. 2d 500, ¶26 (guardians ad litem provide "a second set of watchful eyes sensitive to [the ward's] needs at each step of the commitment process").  Individuals who are subject to protective placements may have mental or physical disabilities that change over time and a guardian ad litem who has a relationship built over time with the ward has a better ability to more fully apprise the court of the ward's current condition, circumstances, and wishes.

¶21    Also, it makes little sense to terminate guardians ad litem after the court's hearing and protective placement order; better that they should remain in place in case the ward has any issues or concerns that arise in the time between a court order and the next petition.  An automatic termination of the appointment runs the significant risk that the ward would be left without an advocate for ten months out of each year.  As our supreme court explains in *Helen E.F.*, a guardian ad litem "must file periodic reports with the court outlining the need for continued protective placement and services, *see* [WIS. STAT.] § 55.18(2), and the need for continued involuntary administration of psychotropic medication, *see* [WIS. STAT.] § 55.19(2)."  340 Wis. 2d 500, ¶27.  Thus, there are duties that remain even *after* a protective placement order has been executed.

¶22    Finally, turning to practical and logistical matters, there is a limited pool of individuals who are available for guardian ad litem appointments.  Reappointments may diminish that pool or create conflicts of interest.   And continually appointing, terminating and reappointing the same attorney could cause multiple billing accounts and a waste of judicial time and resources.

¶23　"The purposes underlying a statute are also useful in ascertaining a statute's meaning." *Soto*, 343 Wis. 2d 43, ¶20. WISCONSIN STAT. ch. 55 "implicate[s] the rights of thousands of persons who have been protectively placed in Wisconsin institutions because of the infirmities of age, chronic mental illness, developmental disabilities, or similar incapacities." *Goldie H.*, 245 Wis. 2d 538, ¶4. It was enacted to "address the legislature's concern that these citizens be given the maximum freedom with the minimum restriction that their troubled conditions allow." *Id.* There is no question that "[t]he legislature has consistently demonstrated its concern for the protection of individuals suffering from mental [and other] infirmities." *Helen E.F.*, 340 Wis. 2d 500, ¶11.

¶24　WISCONSIN STAT. chs. 51 and 55 provide distinct and unique protective statutes that were designed to protect distinct sets of individuals. *Watts*, 122 Wis. 2d at 74-75. It is only in ch. 55, however, that the legislature has mandated that wards shall have their interests protected by a guardian ad litem. *Helen E.F.*, 340 Wis. 2d 500, ¶24; § 55.10(4)(b). This is because "[t]he appointment of a GAL ensures that individuals like [Bonnie] are provided adequate and specialized care." *See Helen E.F.*, 340 Wis. 2d 500, ¶24. The legislature put this provision in place

> because it recognized that individuals subject to the chapter need an additional advocate for their best interests, given that ch. 55 is focused on the provision of long-term care to individuals with incurable conditions. *See* § 55.195(1-9) (explaining the duties of the GAL); *see Jennifer M. v. Maurer*, 2010 WI App 8, ¶7, 323 Wis. 2d 126, 779 N.W.2d 436 (stating that a GAL provides "an advocate for the best interest of the ward.")[.]

*Helen E.F.*, 340 Wis. 2d 500, ¶25. When compared to ch. 51, ch. 55 "is designed for long-term management of disorders that cannot be treated, and therefore are unlikely to subside, meaning that the individual in need of protection is unlikely to

return to society." ***Helen E.F.***, 340 Wis. 2d 500, ¶25. This, our supreme court explains, is precisely why "periodic assessments by a GAL of the individual's situation are essential to the continual provision of appropriate care." ***Id.***

¶25    If Bonnie's argument is successful, it will have the immediate and dire consequence that individuals in protective placement will automatically lose their guardian ad litem's advocacy after protective placement is reordered *each and every* year and will be at the mercy of their guardian and their county of residence until a petition and annual report is filed ten or eleven months later. Any issues that a guardian ad litem could learn during that timeframe, and any new information that could have been seen by that "second set of watchful eyes" would remain undisclosed to the court for almost one full year. *See id.*, ¶26. This was the underlying rationale that led our supreme court to extend statutory protections to wards under WIS. STAT. ch. 55's auspices in ***Watts***. Bonnie's interpretation would lay waste to this additional layer of protection.

¶26    This unreasonable reading of the statute would leave a large population of vulnerable individuals unprotected for a majority of the time. As our supreme court noted in ***Watts***, the procedure by which a guardian or ward can seek court modification of an order for protective placement (now codified at WIS. STAT. § 55.16) is inherently inadequate:

> "[T]heir protection is illusory when a large segment of the protected class cannot realistically be expected to set the proceedings into motion in the first place. It is the state, after all, which must ultimately justify depriving a person of a protected liberty interest by determining that good cause exists for the deprivation."

*Watts*, 122 Wis. 2d at 78 (alteration in original) (quoting ***Doe v. Gallinot***, 657 F.2d 1017, 1023 (9th Cir. 1981)).

¶27 In general, the appointment of a WIS. STAT. ch. 55 guardian ad litem continues *until* a circuit court terminates the appointment, appoints a new guardian ad litem, or the guardian ad litem withdraws from the appointment.[14] Bonnie is incorrect in asserting that the statutes mandate annual reappointments of guardians ad litem in order for a circuit court to maintain competency.

¶28 So, what happened here, and did it follow the legislature's mandate? Racine County filed a petition for annual review on July 26, 2018. A guardian ad litem was already in place; that attorney filed a GAL Report, the circuit court conducted a hearing, and a new protective placement order was issued on November 8, 2018. But on January 24, 2019, for unknown reasons, the circuit court appointed a different guardian ad litem for Bonnie. That guardian ad litem never filed a report. And, on June 12, 2019, the court appointed Attorney Wishau as Bonnie's new guardian ad litem. On August 27, 2019, the County filed a petition for annual review and Attorney Wishau filed a GAL Report on September 16, 2019.

¶29 That means that the circuit court *appointed* a guardian ad litem for Bonnie *after* the 2010 annual report was filed, and he remained in place until January, 2019; that satisfied the statutory requirement. Then, the court *appointed*

---

[14] Bonnie's reference to the state forms as evidence that a guardian ad litem may *only* file a GAL Report within thirty days of their appointment gives undue weight to a form; it elevates a form over the statute's clear language. It further misconstrues the language in the form.

The order states that a "matter is pending" in the circuit court and Bonnie "requires the appointment of a guardian ad litem." The order did not state how long the appointment of Attorney Wishau as guardian ad litem was to last, and it did not state that a guardian ad litem would have to be reappointed every year if a subsequent petition for annual review was filed by the County. Nor did the order state that the appointment of Attorney Wishau was solely with respect to a specific hearing or hearings.

a guardian ad litem *after* the 2018 petition for annual review. That makes clear that the circuit court complied with WIS. STAT. § 55.18(2) and *did* appoint a guardian ad litem *after* the County filed a report. In point of fact, the court kept in place the prior 2010 guardian ad litem and then appointed two more guardians ad litem in 2019. Thus, there was a guardian ad litem for Bonnie when the County filed its 2019 petition for annual review. The legislature's statutory mandate that Bonnie have a guardian ad litem representing her interests whenever an annual report was filed was satisfied. Her interests in the ten months in between were also protected by the continual service of the appointed guardian ad litem. There remained "a second set of watchful eyes sensitive to [Bonnie's] needs at each step of the commitment process and on a regular basis after the issuance of a protective order." *Helen E.F.*, 340 Wis. 2d 500, ¶26.

### B. Case law confirms there is no reappointment requirement.

¶30    In determining which option to select in order to remedy the unconstitutionality of the guardianship law, the *Watts* court stated it could "[r]equire annual implementation of the procedure ... for initial guardianship and protected placement actions," but it expressly declined to do so:

> We hold it is not necessary for equal protection purposes to annually commence the procedure as if it were the initial petition for placement. A periodic consideration by a court affords an independent, impartial reconsideration of the existing circumstances of the placed person.

*Watts*, 122 Wis. 2d at 83-84. This is further evidence that neither *Watts* nor the statutes require annual guardian ad litem appointments under WIS. STAT. ch. 55.

¶31    Finally, without a conclusion directly on this point, the state supreme court in *Helen E.F.* implicitly indicated in three separate statements that guardians

ad litem need not be reappointed annually but rather may have an appointment that spans more than one year. First, the court held that "periodic *assessments* by a GAL of the individual's situation are essential to the *continual* provision of appropriate care." *Helen E.F.*, 340 Wis. 2d 500, ¶25 (emphasis added). The court mentioned assessments (plural) and continual care, implying guardian ad litem service of more than one year. Next, the court stated that "[a]lthough Helen's appointed counsel also had Helen's best interests in mind, a GAL would have provided a second set of watchful eyes sensitive to Helen's need at *each step* of the commitment process *and on a regular basis after* the issuance of a protective order." *Id.* at ¶26 (emphasis added). Again, this implies that a guardian ad litem has more duties to the ward than just filing one report. Finally, the court explained that

> the GAL must file periodic *reports* with the court outlining the need for *continued* protective placement and services, and the need for continued involuntary administration of psychotropic medication. In short, the GAL would have provided the court with advice as to Helen's best interest regarding psychotropic medication *throughout the pendency—and continuance—*of the protective placement under [WIS. STAT.] ch. 55. Such advice would have given the court valuable assistance in overseeing Helen's care with particular sensitivity to her unique needs.

*Id.* at ¶27 (emphasis added; citations omitted).

¶32 Each of these references can be read to indicate that a guardian ad litem could serve—and maybe should serve—for an extended period of time in order to provide the most assistance to both the ward and the circuit court. There is a strong presumption that the more knowledge a guardian ad litem has of the ward, the better that ward's interests would be protected both during the time between annual reports and at any due process hearings before the circuit court. This further negates Bonnie's interpretation of the statutory language.

16

### C. The local rules also support the County's interpretation.

¶33 Finally, the County argues that the Racine County Circuit Court Rules further support the statutory interpretation that guardians ad litem in chapter 55 protective placements continue to serve until they are terminated. The rules provide with respect to the "ANNUAL REVIEW OF PROTECTIVE PLACEMENT (WATTS REVIEW) §55.18 AND ANNUAL REVIEW OF INVOLUNTARY MEDICATION ORDER UNDER §55.19" that "[t]he GAL appointment will continue for all annual reviews. If a new GAL is needed, the court will appoint one." Racine County Circuit Court Rules, Rule V.O.b. (2022).[15]

¶34 Bonnie correctly notes that if procedures set forth in local rules conflict with a statute, the statute applies. But the local rule here does not conflict with the statute. They actually both stand for the same proposition: a guardian ad litem, appointed by the circuit court after a petition for annual review, remains in place until that appointment is terminated by the court. Bonnie is incorrect when she asserts that the tethering of the GAL's Report deadline to the appointment date necessarily means that a guardian ad litem must be reappointed each and every year.

¶35 This court concludes that there is no requirement for an annual reappointment of a guardian ad litem for wards under state protective placement services. It is correct that a guardian ad litem shall be appointed after a petition is filed, but, once that appointment is made, the circuit court retains competency over the protective placement proceedings until the appointment is terminated and a

---

[15] The Racine County Circuit Court Rules are available at https://www.racinecounty.com/home/showpublisheddocument/44321/638142972264670000.

17

new guardian ad litem is not appointed. Even though this conclusion fully resolves this appeal, this court addresses the other competency question at issue.

**II.    The competency challenge could be and was waived.**

¶36    There is a general rule that "challenges to the circuit court's competency are waived if not raised in the circuit court." ***Tina B. v. Richard H.***, 2014 WI App 123, ¶23, 359 Wis. 2d 204, 857 N.W.2d 432 (quoting ***Mikrut***, 273 Wis. 2d 76, ¶30).

> However, the ***Mikrut*** court noted a longstanding qualification to the general rule, namely, an exception for limitation periods within which courts must act as mandated by statutes: [W]e have consistently ruled that a court's loss of power *due to the failure to act within statutory time periods* cannot be stipulated to nor waived.

***Tina B.***, 359 Wis. 2d 204, ¶23 (quoting ***Mikrut***, 273 Wis. 2d 76, ¶25); *see also* ***Sheboygan Cnty. Dep't of Soc. Servs. v. Matthew S.***, 2005 WI 84, ¶37, 282 Wis. 2d 150, 698 N.W.2d 631 ("[A] competency challenge based on the violation of the statutory time limitation of WIS. STAT. § 48.422(2) cannot be waived, even though it was not raised in the circuit court.").

¶37    In cases where a party need not first challenge competency in the circuit court, a specific time limit or mandated deadline must be at issue. For instance, a circuit court in a termination of parental rights case is required, under WIS. STAT. § 48.422(2), to hold a fact-finding hearing within forty-five days of a contest to the petition, and if it fails to do so, and no extensions or continuances have been legally granted, that court not only loses competency but a parent may raise that challenge for the first time on appeal. This is because it is such a fundamental basis underlying the ultimate conclusions that it cannot be ignored no matter when it is raised. *See* ***Tina B.***, 359 Wis. 2d 204, ¶¶19-20 (explaining that

circuit court lost competency when it held a hearing under WIS. STAT. ch. 54 more than ninety days after the petition filing date even though all parties agreed to an extension of time and no party raised a challenge to competency). There can be no valid order or judgment when a court has no legal authority to act.

¶38 But the statute at issue here requires that a guardian ad litem be appointed by the circuit court *after* a petition for annual review regarding protective placement services is filed by a county. *See* WIS. STAT. § 55.18(2). There is no time limit in which that appointment must be made; the only requirement is that it *be made* at some point in time. Thus, the competency challenge made here by Bonnie is not based, as she asserts, on a violation of a statutory time limit, much less one that cannot be waived even if it is not made in front of the circuit court. *See Matthew S.*, 282 Wis. 2d 150, ¶2; *Mikrut*, 273 Wis. 2d 76, ¶3 n.1.

¶39 Bonnie contends that statutory time limit violations may never be waived in any type of case. The court in *Matthew S.* certainly implies the same[16]—but that case focused on the Children's Code (WIS. STAT. ch. 48) and not guardianship (WIS. STAT. ch. 54) or protective placement services (WIS. STAT. ch. 55) cases. A review of unpublished ch. 55 protective placement appellate decisions is instructive; it reveals that, while circuit court competency challenges have been raised in limited circumstances, they have only been successful if a

---

[16] In fact, albeit in an unpublished opinion, the court in *Constance N. v. Anna Maye Z.*, No. 2009AP795, unpublished slip op. ¶15 (WI App Feb. 9, 2010), distinguished the "never waived" holding of *Matthew S.* even where there was a statutory time limit when the subject individual sought the delay and expressly consented to an extension she stated was "necessary for her to properly contest the petitions." Unpublished Wisconsin cases, issued on or after July 1, 2009, may not be cited for precedential value, but may be cited for persuasive value. *See* WIS. STAT. RULE 809.23(3)(a), (b).

statutory deadline has been missed.[17] Bonnie's broad-stroke contention, however, need not be resolved in this appeal because no statutory time limits or mandatory deadlines are applicable to her competency challenge. *See, e.g.*, *State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (appellate courts need not address nondispositive issues).

## CONCLUSION

¶40 This court agrees with our state supreme court that "[t]aking a few moments to protect the rights of our most vulnerable citizens is not an unacceptable cost to society. It is an expression of our humanity." *Goldie H.*, 245 Wis. 2d 538, ¶35. Even more than that, "[i]t is a commitment that no person will be warehoused and forgotten by the legal system." *Id.* This appeal—and others concerning wards under protective placement—is important and deserves careful consideration.

¶41 Based upon the foregoing, this court concludes that there is no statutory requirement that a circuit court in a WIS. STAT. ch. 55 protective placement proceeding must annually reappoint a guardian ad litem for the ward. The legislative mandate favors the continued service of a guardian ad litem to provide "a second set of watchful eyes sensitive" to the ward's needs "at each step

---

[17] *See Department on Aging v. R.B.L.*, No. 2022AP1431, unpublished slip op. ¶7 (WI App June 27, 2023) (concluding circuit court lost competency when petition for annual review of protective placement was filed after statutory deadline and R.B.L.'s physical presence at annual review hearing was required and not properly waived); *Lipp v. Outagamie Cnty. Dep't of Health & Hum. Servs.*, No. 2011AP152, unpublished slip op. ¶2 (WI App June 5, 2012) (concluding "circuit court lost competency to act on the guardianship petition by failing to complete the hearing within the statutorily mandated time limitation"); *Brown County v. Marilyn M.*, No. 2005AP3051, unpublished slip op. ¶10 (WI App June 27, 2006) (determining that "the *Watts* rule is not a mandatory statutory time limit" so a challenge to the circuit court's competency to proceed with a "*Watts* review" can be waived if not raised before the circuit court).

of the commitment process and on a regular basis after the issuance of a protective order." ***Helen E.F.***, 340 Wis. 2d 500, ¶26. Accordingly, the circuit court in this appeal did not lose competency over Bonnie's protective placement proceeding.

¶42 In addition, while some competency challenges may never be waived, the procedure at issue here is not subject to a statutorily mandated deadline, and thus, Bonnie waived her right to challenge the circuit court's competency by failing to raise that objection below.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.